UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY ROMAN et al., | Case No. 2:25-cv-08531-HDV-E |
| Plaintiffs, | |
| | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [18] AND DENYING PLAINTIFFS' MOTION TO AMEND [21]** |
| v. | |
| GAVIN NEWSOM et al., | |
| Defendants. | |

## I.    INTRODUCTION

The COVID-19 virus has claimed over 1.2 million lives in the United States, including more than 100,000 lives in California, marking one of the deadliest public health disasters in our nation's history.  In 2020 and early 2021, before vaccines became widely available, public-health authorities had few tools at their disposal to stem the virus's exponential spread.  They largely relied on prophylactic health measures such as physical distancing and face coverings.

In November 2020, California's Occupational Safety and Health Standards Board adopted emergency temporary standards ("ETS") formalizing these and other preventive health measures to curb the transmission of COVID-19 in the workplace.  The California Department of Industrial Relations ("DIR"), Division of Occupational Safety and Health ("Cal/OSHA"), enforced these ETS through citations and civil penalties.

This case arises from the specific citations and penalties Cal/OSHA imposed on Plaintiffs Tony Roman and Basilico's Pasta e Vino ("Basilico's") in June 2021 for violating the ETS.  More than four years after receiving these citations, Plaintiffs filed this federal civil rights action challenging the penalties as retaliatory and violative of the First Amendment, unconstitutionally excessive under the Eighth Amendment, and unlawfully enforced under the Fourteenth Amendment's due process clause.  *See* First Amended Complaint ("FAC") [Dkt. 13].  Plaintiffs demand awards of declaratory, injunctive, and monetary relief against Defendants Cal/OSHA and Governor Gavin Newsom in his official capacity.  *Id.* at 35–36.

Defendants move to dismiss Plaintiffs' FAC in its entirety.  Defendants' Motion to Dismiss FAC ("Motion") [Dkt. 18].  They argue that the Eleventh Amendment immunizes them from Plaintiffs' suit and that Plaintiffs' federal civil rights claims are barred by the statute of limitations.  *Id.* at 12–19.  In response, Plaintiffs abandon their claims against Cal/OSHA, assert that their remaining claims against Governor Newsom are viable, and move to amend their FAC.  Plaintiffs' Opposition to Motion ("Opposition") at 14–17 [Dkt. 24]; Plaintiffs' Motion to Amend FAC ("Motion to Amend") [Dkt. 21].  For the reasons discussed below, the Court grants Defendants' Motion and denies Plaintiffs' Motion to Amend.

2

## II.    BACKGROUND

In November 2020, California's Occupational Safety and Health Standards Board adopted the ETS to limit transmission of the COVID-19 virus in the workplace.  FAC ¶ 21; *see* Cal. Code Regs. tit. 8, §§ 3205–3205.4 (2020).[1]  The ETS required employers to implement workplace safety protocols, including physical distancing, face coverings, and written COVID-19 prevention programs.  FAC ¶¶ 21, 43; Cal. Code Regs. tit. 8, § 3205(c).  Cal/OSHA was responsible for enforcing the ETS.  Cal. Labor Code § 142 (2002); *see* FAC ¶¶ 10, 23.

### A.    Factual Background[2]

Basilico's is a restaurant in Huntington Beach that is owned by Roman and was subject to the ETS.  *See* FAC ¶¶ 8–9; Cal. Code Regs. tit. 8, § 3205(a)(1).  Roman consistently expressed his strong opposition to California's COVID-19 prevention policies.  FAC ¶¶ 29–33.  In numerous public statements between 2020 and 2022, Roman dismissed those policies as "unlawful government overreach."  *Id.* ¶ 31.  In defense of "principles of liberty and freedom," Roman publicly refused to comply with those policies and proclaimed Basilico's as the "[c]onstitutional [b]attleground" for the fight against California's "tyranny" and "unlawful and obsessive attempts to force shutdowns."  *Id.* ¶¶ 29–30.  To this end, Roman rebuffed executive orders requiring individuals to stay at home to limit the spread of the COVID-19 virus, and he defied COVID-19 occupational safety directives like the ETS.  *Id.* ¶ 30.  "To counter the government's action," Roman not only kept Basilico's "open without any restrictions," he "even banned masks from the property."  *Id.*; *see id.* ¶ 31.

On several occasions between late 2020 and early 2021, Cal/OSHA inspectors visited Basilico's to ascertain its compliance with the ETS.  *See id.* ¶¶ 35, 40.  Each time, Plaintiffs refused to allow Cal/OSHA to inspect the premises.  *Id.*  On January 8, 2021, Cal/OSHA inspectors returned to Basilico's with a warrant and a police escort.  *Id.* ¶ 40.  Still, "Cal/OSHA representatives were refused entry by Roman and sent away."  *Id.*

---

[1] The ETS were amended several times after November 2020 and expired on February 3, 2025.  Cal. Code Regs. tit. 8, § 3205(a)(1) (2023); FAC ¶ 22.

[2] At the motion-to-dismiss stage, the Court accepts as true all of Plaintiffs' well-pleaded factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1       On June 17, 2021, Cal/OSHA cited Basilico's for general, serious, and willful violations of

2 the ETS.  Defendants' Request for Judicial Notice ("RJN") Ex. A, at 13–30 [Dkt. 19].[3]  Cal/OSHA

3 charged Plaintiffs with failing to implement a written COVID-19 prevention program, failing to

4 provide COVID-19 safety training to employees, failing to take protective measures against the

5 transmission of COVID-19, and failing to ensure employees wore face coverings in Basilico's.  *Id.*

6 For these violations, Cal/OSHA fined Basilico's $152,060.[4]  *Id.* at 29.

7       That same day, Cal/OSHA sent notice of the citations and penalties by certified mail to

8 Basilico's business address at "21501 Brookhurst [sic] Street" in Huntington Beach and to Roman

9 personally at "3857 Birch Street" in Newport Beach.  *Id.* at 31–32.  The notices provided that

10 Plaintiffs had a right to administratively appeal the citations and penalties within fifteen business

11 days and to request an informal conference with Cal/OSHA.  *Id.* at 13–14, 16.  The notices further

12 provided that if the appeal deadline lapsed without action by Plaintiffs, the citations and penalties

13 would become final and unreviewable.  *Id.* at 14; *see* Cal. Code Regs. tit. 8, § 333(a).

14       In May 2023, the DIR brought a civil enforcement action against Basilico's in the Orange

15 County Superior Court to recover the unpaid penalties.  *See* RJN Ex. A, at 11.  On May 23, 2023, the

16 DIR mailed Basilico's a notice containing an "[administrative] judgment and letter of payment due."

17 *Id.* at 33 (emphasis omitted).  The mailing also listed the case number for the pending enforcement

18 action.  *Id.*  On May 24, 2023, the state court entered judgment against Basilico's for $181,865.49,

19 comprised of $152,060 in penalties, $29,370.49 in accrued interest, and $435 in filing fees.  *Id.* at 11.

20 The clerk of the state court mailed notice of the judgment to Basilico's on June 1, 2023.  *Id.* at 10.

21

22

23 [3] Although Plaintiffs refer to the citations and penalties extensively, they do not attach a copy of those citations or penalties to their FAC.  Defendants attach those citations and penalties as an exhibit to their RJN.  *See* RJN Ex. A, at 13–30.  For the reasons discussed below, the Court grants Defendants' unopposed RJN.

24

25 [4] Plaintiffs' allegations are internally inconsistent regarding the sum of the penalties Cal/OSHA imposed on Basilico's.  Plaintiffs allege the penalties total "$185,979.84."  FAC ¶ 47.  Elsewhere

26 Plaintiffs claim the total is "$185,000.00."  *Id.* ¶ 117.  Still elsewhere Plaintiffs assert that the entire sum is "$180,000."  *Id.* ¶ 116.  As noted, Cal/OSHA fined Basilico's $152,060.  RJN Ex. A, at 29.

27 Plaintiffs' alternative monetary figures appear to account for accrued statutory interest and other fees

28 that were added to the principal penalty sum after Plaintiffs failed to pay the penalties.  *See id.* at 11.

1          On August 21, 2023, the DIR served a notice of levy on Basilico's, requesting Basilico's

2   compliance to satisfy the outstanding penalties.  FAC ¶¶ 62, 65.  That same month, the DIR levied

3   Basilico's bank account to recover a portion of the unpaid penalties.  *Id.* ¶¶ 67–68.  The DIR

4   subsequently levied Basilico's bank account again in October 2024.  *Id.* ¶ 68.

5          Plaintiffs allege that Basilico's "did not receive notice prior to the Notice of Levy that it

6   would be fined, levied[,] or otherwise have its bank accounts seized."  *Id.* ¶ 66.  They further allege

7   that they "had no hearing" and "were not provided with any opportunity . . . to make an argument"

8   against Cal/OSHA's imposition of the penalties.  *Id.*; *see id.* ¶¶ 68, 117, 120.

9          **B.       Procedural Background**

10         Plaintiffs filed their original complaint on September 9, 2025.  Complaint [Dkt. 1].  On

11  October 13, 2025, Plaintiffs filed an amended complaint against Cal/OSHA and Governor Newsom

12  in his official capacity.  *See* FAC.  In their FAC, Plaintiffs advance three causes of action under

13  42 U.S.C. section 1983: (1) retaliation in violation of the First Amendment (Count I), (2) violation of

14  the unconstitutional-conditions doctrine (Count II), and (3) violation of the Fourteenth Amendment's

15  due process clause (Count IV).  *Id.* ¶¶ 79–105, 113–22.  Plaintiffs also assert a state law claim for

16  declaratory relief (Count III) and allege, without separately pleading, an Eighth Amendment

17  excessive-fines violation.  *Id.* ¶¶ 60–63, 106–12.  For these claims, Plaintiffs demand awards of

18  declaratory, injunctive, and monetary relief.  *Id.* at 35–36.

19         On November 3, 2025, Defendants brought the instant Motion to Dismiss under Federal

20  Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Motion at 2.  Defendants concurrently filed their

21  RJN, and Plaintiffs subsequently filed a Motion to Amend the FAC.  *See* RJN; Motion to Amend.

22  Defendants' Motion is now fully briefed.  *See* Opposition; Defendants' Reply in Support of Motion

23  ("Reply") [Dkt. 26].  As is Plaintiffs' Motion to Amend.  *See* Defendants' Opposition to Motion to

24  Amend ("Amendment Opposition") [Dkt. 27]; Plaintiffs' Reply in Support of Motion to Amend

25  ("Amendment Reply") [Dkt. 28].  The Court heard oral argument on February 5, 2026, and took the

26  matters under submission.  [Dkt. 30].

27

28

1  **III.    MOTION TO DISMISS**

2      Defendants move to dismiss the FAC in its entirety under Rules 12(b)(1) and 12(b)(6).

3  Motion at 2.  They argue that Cal/OSHA and Governor Newsom are immune from suit under the

4  Eleventh Amendment, and that Plaintiffs' federal civil rights claims are time-barred.  *Id.* at 20–27.

5      **A.    Legal Standards**

6          **1.    Federal Rule of Civil Procedure 12(b)(1)**

7      Rule 12(b)(1) allows a party to challenge claims in an initial pleading for lack of subject-

8  matter jurisdiction.  This includes challenges based on sovereign immunity.  *See Pistor v. Garcia*,

9  791 F.3d 1104, 1111 (9th Cir. 2015).

10      Generally, "the party asserting subject matter jurisdiction has the burden of proving its

11  existence, i.e., that immunity does not bar the suit."  *Id.* (citations omitted).  When a court is

12  presented with a facial challenge to its jurisdiction on sovereign-immunity grounds, it accepts the

13  factual allegations in the complaint as true.  *Lacano Invs., LLC v.* Balash, 765 F.3d 1068, 1071

14  (9th Cir. 2014).  However, when a court is confronted with a *factual* challenge to its jurisdiction,

15  "[n]o presumptive truthfulness attaches to [a] plaintiff's allegations."  *Pistor*, 791 F.3d at 1111

16  (quoting *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009)).  In resolving a motion to

17  dismiss based on sovereign immunity, a court "is not confined by the facts contained in the four

18  corners of the complaint."  *Americopters, LLC v. F.A.A.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006).  A

19  court may consider affidavits, declarations, and other evidence relevant to its jurisdiction.

20  *Sommatino v. United States*, 255 F.3d 704, 709 n.3 (9th Cir. 2001).  A court may also "resolve

21  factual disputes when necessary."  *Pistor*, 791 F.3d at 1111 (citation modified).

22          **2.    Federal Rule of Civil Procedure 12(b)(6)**

23      Rule 12(b)(6) allows a party to seek dismissal of all or some claims in a complaint for failure

24  to state a claim upon which relief may be granted.  "To survive a motion to dismiss, a complaint

25  must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on

26  its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

27  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

28  the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

1    Determining whether a complaint states a claim for relief is a "context-specific task that

2    requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

3    Generally, a court must limit its review to the pleadings and construe all well-pleaded factual

4    allegations as true and in the light most favorable to the plaintiff. *Lee v. City of Los Angeles*,

5    250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds as recognized by Galbraith v. County*

6    *of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002). However, a court may consider documents

7    incorporated into the complaint and materials subject to judicial notice when ruling on a

8    Rule 12(b)(6) motion. *Tellabs, Inc. v. Major Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). To

9    this end, a court need not accept "allegations that contradict matters properly subject to judicial

10    notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor

11    need a court blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable

12    inferences. *Id.* Under this rubric, dismissal under Rule 12(b)(6) is appropriate when a complaint

13    exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a

14    cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

15    **B.    Discussion**

16    **1.    Eleventh Amendment Immunity**

17    The Eleventh Amendment imposes an important limitation on federal court jurisdiction.

18    *Sofamor Danek Grp. v. Brown*, 124 F.3d 1179, 1183 (9th Cir. 1997). It prohibits "[t]he Judicial

19    power of the United States" from extending "to any suit in law or equity, commenced or prosecuted

20    against one of the United States by Citizens of another State." U.S. Const. amend. XI. Although the

21    Eleventh Amendment does not, by its terms, prohibit an action against a state by its own citizens, the

22    Supreme Court has construed its text as barring such suits. *See Hans v. Louisiana*, 134 U.S. 1, 15

23    (1890); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). Consequently, the Eleventh Amendment

24    prohibits a federal court from entertaining any suit by a private citizen against their own state. *Hans*,

25    134 U.S. at 15; *Nat. Res. Def. Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 421 (9th Cir. 1996).

26    This jurisdictional bar extends to suits against state agencies and to state officers acting in their

27    official capacities, *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142–46

28    (1993), and it "applies regardless of the nature of the relief sought," *Pennhurst State Sch. & Hosp. v.*

7

1  *Halderman*, 465 U.S. 89, 100 (1984); *see also id.* at 106 (holding that the Eleventh Amendment also

2  bars state law claims against state officials in federal court).

3      There are three exceptions to this jurisdictional bar.  First, Congress can abrogate a state's

4  sovereign immunity.  *Quern v. Jordan*, 440 U.S. 332, 344 (1979).  In passing 42 U.S.C.

5  section 1983, however, Congress "had no intention to disturb the States' Eleventh Amendment

6  immunity."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).  Second, a state may waive

7  its immunity and consent to suit in federal court.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234,

8  238 (1985).  But California has neither waived its sovereign immunity nor consented to section 1983

9  suits against it in federal court.  *Dittman v. California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999).

10  That leaves the third exception: the *Ex parte Young* exception.  209 U.S. 123 (1908).  Under *Ex*

11  *parte Young*, a federal court may entertain an action brought against state officers in their official

12  capacities to prospectively enjoin their official acts when those acts violate federal law.  *Ex parte*

13  *Young*, 209 U.S. at 155–56.  This exception is premised on the notion that a state officer who

14  violates federal law is "stripped of his official or representative character" and cannot cloak his

15  unlawful actions under the aegis of state sovereign immunity.  *Pennhurst*, 465 U.S. at 102 (quoting

16  *Ex parte Young*, 209 U.S. at 160); *Sofamor Danek Grp.*, 124 F.3d at 1183.

17      Under the *Ex parte Young* exception, the scope of a district court's authority to award relief

18  is cabined.  A district court may award only prospective relief; it may not award retrospective relief

19  that would require the payment of funds from the state treasury.  *Pennhurst*, 465 U.S. at 102–03.  To

20  determine whether this exception applies, a court "need only conduct a straightforward inquiry into

21  whether the complaint alleges an ongoing violation of federal law and seeks relief properly

22  characterized as prospective."  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645

23  (2002) (citation omitted).  To invoke it, a plaintiff must demonstrate that the state-official defendant

24  has some connection to the enforcement of the allegedly unconstitutional act.  *Ex parte Young*,

25  209 U.S. at 157.  The requisite connection "must be fairly direct; a generalized duty to enforce state

26  law or general supervisory power over the persons responsible for enforcing the challenged

27  provision will not subject an official to suit."  *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d

28  1128, 1134 (9th Cir. 2012) (citation omitted).

1    Against this legal backdrop, Defendants argue that state sovereign immunity shields them

2    from Plaintiffs' suit and that the Eleventh Amendment bars the Court from entertaining Plaintiffs'

3    claims.  Motion at 20–24.  Plaintiffs concede that "state entities, such as Cal-OSHA, enjoy immunity

4    from the claims of American citizens" but contend that their claims against Governor Newsom

5    remain viable under *Ex parte Young*.  Opposition at 5, 17; *see id.* 14–17.  The Court finds that both

6    Cal/OSHA and Governor Newsom are immunized from Plaintiffs' suit and concludes that the

7    Eleventh Amendment precludes the Court from entertaining Plaintiffs' claims.

8    As to Cal/OSHA, Plaintiffs abandon their claims and concede dismissal.  Opposition at 5, 17;

9    *see* Amendment Reply at 10, 12.  This concession is well-taken.  As an arm of the state, Cal/OSHA

10   is immune from suit under the Eleventh Amendment.  *Krainski v. Nev. ex rel. Bd. of Regents of Nev.*

11   *Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010) ("The Eleventh Amendment jurisdictional

12   bar . . . extends to state instrumentalities and agencies."); *see also Drevaleva v. Alameda Health Sys.*,

13   No. 22-16150, 2023 WL 2584258, at *1 (9th Cir. Mar. 21, 2023) (affirming dismissal of claims

14   against the DIR on Eleventh Amendment grounds).  By voluntarily abandoning their claims against

15   Cal/OSHA, Plaintiffs effectively agree that the Court may treat their abandonment as final and

16   dismiss those claims with prejudice.  *See Alcala v. City of Garden Grove*, No. 25-cv-00078-ODW-

17   DFMx, 2025 WL 3496777, at *10 (C.D. Cal. Dec. 5, 2025).  The Court does so here.

18   Plaintiffs' claims against Governor Newsom are similarly foreclosed.  "[A] suit against a

19   state official in his or her official capacity . . . is a suit against the official's office" and thus is "no

20   different from a suit against the State itself."  *Will*, 491 U.S. at 71.  Because "the

21   Eleventh Amendment bars a citizen from bringing suit against the citizen's own state in federal

22   court," Plaintiffs' claims against Governor Newsom are likewise barred.  *Welch v. Tex. Dep't of*

23   *Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *see Flint v. Dennison*, 488 F.3d 816, 825

24   (9th Cir. 2007) ("[S]tate officials sued in their official capacities . . . are not 'persons' within the

25   meaning of § 1983 and are therefore generally entitled to Eleventh Amendment immunity").

26   Anticipating this result, Plaintiffs invoke the *Ex parte Young* exception.  Opposition at 15.

27   This exception, however, does not save Plaintiffs' claims.  The FAC is devoid of any plausible

28   allegations suggesting that Plaintiffs seek an award of prospective relief to enjoin ongoing violations

of federal law by Governor Newsom.  Indeed, Plaintiffs concede that the only prospective relief they demand is an order "prohibiting *Cal-OSHA*" from engaging in certain conduct.  Opposition at 15 (citing FAC at 35) (emphasis added).  Plaintiffs neither expressly nor tacitly demand any such relief against Governor Newsom.  Consequently, the *Ex parte Young* exception does not apply.  *See Hettinga v. Newsom*, No. 20-cv-06092-PA-DFMx, 2021 WL 3024310, at *3 (C.D. Cal. Jan. 25, 2021) (finding that the *Ex parte Young* exception did not apply to claims against Governor Newsom where plaintiff sought prospective relief from a different state official), *report & recommendation adopted*, 2021 WL 10425389 (C.D. Cal. Mar. 1, 2021).

Moreover, even if the Court were to charitably construe the relief demanded from Cal/OSHA as reaching Governor Newsom, Plaintiffs nonetheless could not avail themselves of the exception. Even a cursory review of the FAC reveals that Plaintiffs have failed utterly to plead a plausible connection between Governor Newsom and the challenged citations of Basilico's. Governor Newsom did not promulgate the ETS; the Occupational Safety and Health Standards Board did.  *See* Occupational Safety and Health Standards Bd., Notice of Proposed Emergency Action: COVID-19 Prevention (Nov. 2020), https://perma.cc/7V8Q-UDJN.  In fact, the board is "the only agency in the state authorized to adopt occupational safety and health standards."  Cal. Labor Code § 142.3(a)(1) (2002).  Nor did Governor Newsom issue the citations to or impose the civil penalties on Basilico's; Cal/OSHA did.  *See* FAC ¶ 57 (alleging that Cal/OSHA levied penalties against Basilico's); RJN Ex. A, at 13–29 (citations and penalties).  Indeed, the California Labor Code tasked Cal/OSHA, not Governor Newsom, with "enforc[ing] all occupational safety and health standards" adopted by the board.  Cal. Labor Code § 142; *id.* § 6308 (1984).  And Governor Newsom neither participated in the May 2023 state enforcement action nor levied Basilico's bank account to recover the unpaid penalties; the DIR did.  FAC ¶¶ 64–65, 100, 115–16; RJN Ex. A, at 11; *see also* Cal. Labor Code § 6650 (2001) (authorizing the DIR to file a state court enforcement action to recover unpaid civil penalties).

In addition, Plaintiffs do not allege any facts that plausibly support the inference that Governor Newsom instructed Cal/OSHA to investigate Plaintiffs, directed Cal/OSHA to issue the citations and penalties to Basilico's, or participated in the state enforcement proceedings.

1    Governor Newsom's only apparent connection to these activities is his general duty to enforce

2    California law.  But that connection is too attenuated to invoke *Ex parte Young* exception.  *See Coal.*

3    *to Defend Affirmative Action*, 674 F.3d at 1134 (holding that Governor Brown was immune from suit

4    because "his only connection to [the challenged statute was] his general duty to enforce California

5    law"); *Harris v. Newsom*, No. 20-cv-10310-DMC-P, 2021 WL 3032749, at *3 (E.D. Cal. July 19,

6    2021) (finding that Governor Newsom was immune from suit because "[p]laintiff has not identified

7    specific conduct by Newsom that is causally related to the deprivation of his rights").

8         In sum, because state sovereign immunity under the Eleventh Amendment shields Cal/OSHA

9    and Governor Newsom from Plaintiffs' suit, Plaintiffs' FAC must be dismissed for lack of subject-

10   matter jurisdiction.  Although the FAC must be dismissed on this threshold basis, the Court

11   nonetheless addresses Defendants' RJN and statute-of-limitations defense in the interests of

12   completeness and judicial efficiency.  *See New Day Worldwide Inc. v. Swift*, No. 19-cv-09948-AB-

13   SSx, 2020 WL 6050700, at *2 (C.D. Cal. July 21, 2020) (considering additional grounds for

14   dismissal under Rule 12(b)(6) notwithstanding dismissal on threshold basis), *aff'd sub nom. Graham*

15   *v. Swift*, No. 20-55779, 2022 WL 576024 (9th Cir. Feb. 25, 2022).

16                        2.    **Statute of Limitations**

17        Defendants separately contend that Plaintiffs' federal civil rights claims are time-barred and

18   should be dismissed.  Motion at 24–27.  Plaintiffs counter that their claims are timely because they

19   never received notice of Cal/OSHA's citations and penalties or, alternatively, because the

20   continuing-violations doctrine saves their claims.  Opposition at 6–7, 11–14.

21        The statute of limitations applicable to an action under 42 U.S.C. section 1983 is "the

22   personal injury statute of limitations of the state in which the cause of action arose."  *Alameda*

23   *Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011); *see also Fink v. Shedler*,

24   192 F.3d 911, 914 (9th Cir. 1999) (noting that courts also borrow coordinate state tolling rules,

25   except to the extent those rules are inconsistent with federal law).  For section 1983 actions filed in

26   California, the statute of limitations is two years.  Cal. Civ. Proc. Code § 335.1; *Jones v. Blanas*,

27   393 F.3d 918, 927 (9th Cir. 2004).

28

1    "Although state law determines the length of the limitations period, federal law determines

2    when a civil rights claim accrues." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001).  Under

3    federal law, "a claim accrues when the plaintiff knows or has reason to know of the injury which is

4    the basis of the[ir] action. " *Id.* (citation omitted).  This is true even if "the full extent of the injury is

5    not then known." *Wallace v. Kato*, 549 U.S. 384, 394 (2007); *see Morales v. City of Los Angeles*,

6    214 F.3d 1151, 1154 (9th Cir. 2000) (explaining that the plaintiff need not learn of their injury's full

7    extent or consequences to trigger the accrual of the statute of limitations).  Once the plaintiff is

8    aware that they have been injured and knows who inflicted the injury, they are on inquiry notice to

9    determine the readily discoverable details and critical facts of their claims. *Ciria v. Rubino*, No. 07-

10   cv-04770-MMC-PR, 2008 WL 4287558, at *7 (N.D. Cal. Sept. 17, 2008) (citing *Nasim v. Warden*,

11   64 F.3d 951, 955 (4th Cir. 1995)), *aff'd*, 394 F. App'x 400 (9th Cir. 2010).  "[E]ven a plaintiff who

12   did not actually know her rights were violated will be barred from bringing her claim after the

13   running of the statute of limitations, if she 'should have known in the exercise of due diligence.'"

14   *Davis v. Davis*, No. 18-cv-00094-RS, 2018 WL 3069308, at *3 (N.D. Cal. Apr. 25, 2018) (quoting

15   *Bibeau v. Pac. Nw. Rsch. Found., Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999)).

16       Here, the undisputed core injury Plaintiffs complain about is Cal/OSHA's imposition of

17   citations and penalties on Basilico's for violating the ETS.  *See* FAC at 1–2 (defining Plaintiffs'

18   injury as "the citations and penalties" imposed by Cal/OSHA); *e.g.*, *id.* ¶¶ 47, 59–63, 66, 85–92,

19   122; *see also* Opposition at 5–6 (acknowledging that the citations and penalties are Plaintiffs' legal

20   injuries).  Cal/OSHA's imposition of these citations and penalties were, as Plaintiffs stated at oral

21   argument, the "original sin" that precipitated the state enforcement action, the DIR's levies of

22   Basilico's bank account, and this litigation.  Because the citations and penalties are the bases for

23   Plaintiffs' claims, whether those claims are timely turns on when Plaintiffs knew, or in the exercise

24   of reasonable diligence should have known, of the citations and penalties. *Knox*, 260 F.3d at 1013.

25       Defendants argue that Plaintiffs knew of the citations and penalties by July 8, 2021, when

26   Plaintiffs posted a YouTube video acknowledging that Cal/OSHA had cited Basilico's for violating

27   the ETS and proposed a $152,060 penalty on June 17, 2021.  Motion at 16; Reply at 6; *see* RJN

28   Ex. B.  Alternatively, Defendants assert that Plaintiffs knew of the citations and penalties by

1    November 27, 2021, when Plaintiffs' webpage conveyed their awareness that Cal/OSHA had fined

2    Basilico's $152,060 based on its failure to comply with "lockdown related mandates."  Motion

3    at 25 n.10; Reply at 6; *see* RJN Ex. C, at 44.  Plaintiffs respond that their "[a]wareness or

4    constructive knowledge of 'proposed' fines and penalties" is immaterial because that awareness

5    "does not equate to a legally effective method to comply with a citizen's due process rights."

6    Opposition at 7.  Separately, Plaintiffs argue that "there is no proof that the Plaintiffs knew what the

7    fines were for, what the appeals process was[,] or how to access it."  *Id.*

8         The Court concludes that Plaintiffs were aware of the citations and penalties by at least

9    July 8, 2021.[5]  On that date, Plaintiffs posted a YouTube video that reflects the date the citations and

10   penalties were issued ("June 17, 2021"), the precise amount of the penalties that were imposed

11   ("$152,060.00"), who imposed them ("[Cal/]OSHA"), and what Plaintiffs stated they would do in

12   response to them ("nothing").  RJN Ex. B, at 35–36, 39; *see also* Basilico's Pasta e Vino

13   Entertainment, *New Development* (listing the names, phone numbers, and email addresses of the

14   Cal/OSHA officials who issued the citations and penalties to Basilico's).  Plaintiffs acknowledge in

15   their Opposition that Roman made these statements.  Opposition at 6.  They also concede Roman's

16   "[a]wareness or constructive knowledge of [the] 'proposed' fines and penalties" by the date of the

17   YouTube video.  *Id.* at 7.  Roman thus knew, by July 8, 2021, that Cal/OSHA had issued the

18   citations and penalties that comprise Plaintiffs' injury.  By that date, Plaintiffs were at least on

19   inquiry notice of their injury and dutybound to determine the readily-discoverable details and critical

20   facts of their claims.  *Davis*, 2018 WL 3069308, at *3; *Nasim*, 64 F.3d at 955.  Because Plaintiffs

21   knew, or in the exercise of reasonable diligence should have known, of their injury by July 8, 2021,

22   the statute of limitations accrued on that date.  This result holds even if Plaintiffs did not understand

23   the full extent and consequences of those citations and penalties by July 2021.  *Morales*, 214 F.3d

24   at 1154.

25   _____

26   [5] The judicially noticed materials, and the documents incorporated by reference into the FAC,
     decisively resolve when Plaintiffs were aware of the citations and penalties and who imposed them.
27   *See DoorDash, Inc. v. City & County of San Francisco*, No. 21-cv-05502-EMC, 2022 WL 867254,
     at *5 (N.D. Cal. Mar. 23, 2022) (collecting cases for the proposition that "[c]ourts have judicially
28   noticed documents with a party's own statements to establish awareness," particularly when there is
     no dispute that a party made those statements).

1         Alternatively, Plaintiffs were aware of the citations and penalties by no later than

2    November 27, 2021.  On that date, Plaintiffs' webpage reflected their statements that "[Cal/]OSHA"

3    had fined Basilico's "$152,060.00" and "offered [Plaintiffs] an opportunity to defend [them]selves in

4    hearings, to make changes to [their] operations[] in order to come into compliance with lockdown

5    related mandates, and to negotiate away the fines."  RJN Ex. C, at 44.  These statements indicate that

6    Plaintiffs were aware, by November 2021, that Cal/OSHA had cited and fined Basilico's and the

7    basis for Cal/OSHA's doing so.  The statements also show that Plaintiffs were aware that Cal/OSHA

8    had offered them an opportunity to contest the citations and abate Basilico's violations of the ETS.

9    Because Plaintiffs knew, or in the exercise of due diligence reasonably should have known, of their

10   injury by November 27, 2021, the statute of limitations accrued no later than that date.

11        Whether the Court adopts July 2021 or November 2021 as the date of accrual for Plaintiffs'

12   claims, the result is the same.  If Plaintiffs' claims accrued in July 2021, then, under California's

13   two-year limitations period, any claims they filed after July 2023 are untimely.  If Plaintiffs' claims

14   accrued four months later, then any claims they filed after November 2023 are untimely.  In either

15   case, Plaintiffs' claims are untimely because they did not file this action until September 9, 2025.

16   *See* Complaint.  Consequently, their federal civil rights claims are time-barred, unless the limitations

17   period was otherwise statutorily or equitably tolled.

18        Plaintiffs do not identify any statutory provision that would toll the limitations period on their

19   federal civil rights claims.  Plaintiffs do not offer any argument that would warrant invoking the

20   federal equitable tolling doctrine, which requires Plaintiffs to show that they pursued their rights

21   diligently and that some extraordinary circumstance stood in their way.  *See Smith v. Davis*, 953 F.3d

22   582, 588 (9th Cir. 2020).  Nor do Plaintiffs invoke California's equitable tolling doctrine—which

23   requires Plaintiffs to show timely notice, lack of prejudice to Defendants, and reasonable and good

24   faith conduct on Plaintiffs' part.  *See McDonald v. Antelope Cmty. Coll. Dist.*, 45 Cal. 4th 88, 99

25   (2008).  And even if Plaintiffs had made this argument, the record does not support its application

26   here.  *See* RJN Ex. B, at 35–39 (indicating that Plaintiffs' response in 2021 to Cal/OSHA's citations

27   and penalties was "nothing"); *id.* Ex. C, at 44 (stating in November 2021 that Cal/OSHA had offered

28

1    Plaintiffs an "opportunity to defend [them]selves in hearings" and abate their violations but noting

2    that Plaintiffs elected to "ignore[] all correspondence").

3        Rather than pursue any tolling theory, Plaintiffs instead contend that their claims are timely

4    because Cal/OSHA failed to comply with California Code of Regulations title 8, section 333(a),

5    which requires Cal/OSHA to serve notice of citations and penalties by certified mail.  Opposition

6    at 6–7, 11.  Plaintiffs further contend that each levy on Basilico's bank account in August 2023 and

7    October 2024 constituted a new violation that restarted the limitations period under the continuing-

8    violations doctrine.  *Id.* at 12–14.  Neither argument withstands scrutiny.

9        First, Plaintiffs' regulatory-notice argument overlooks that "the accrual of a section 1983

10   cause of action is a question of federal law that is *not* resolved by reference to state law."  *Wallace*,

11   549 U.S. at 388 (citation modified) (emphasis in original); *Knox*, 260 F.3d at 1013.  Under federal

12   law, the date when Plaintiffs knew that Cal/OSHA cited and fined them—not the manner in which

13   Cal/OSHA served notice of those citations and penalties—is determinative of the accrual of the

14   limitations period.  *See Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012)

15   (explaining that a claim accrues "when the plaintiff knew or in the exercise of reasonable diligence

16   should have known of the injury and the cause of that injury").  Because Plaintiffs were aware of the

17   citations and penalties by November 2021, the limitations period accrued in November 2021 and

18   lapsed no later than November 2023.[6]  Plaintiffs' claims are thus time-barred.[7]

---

19   [6] Plaintiffs appropriately concede their "[a]wareness or constructive knowledge of [the] 'proposed'

20   fines and penalties" by July 2021.  Opposition at 7.  Yet they pair that concession with the argument
     that such knowledge "does not equate to a legally effective method to comply with a citizen's due

21   process rights to contest the unlawful nature of such financial penalties."  *Id.*  This argument puts the
     cart before the horse.  It sidesteps the accrual question and proceeds straight to the merits of

22   Plaintiffs' due process claim.  But the Court does not consider the merits of a claim when deciding

23   whether the claim is barred by the statute of limitations.  *Lukovsky v. City & County of San
     Francisco*, 535 F.3d 1044, 1046 (9th Cir. 2008) ("We do not consider the merits of plaintiffs'

24   allegations, however, as the only issue before us is whether the claims are barred by the statute of
     limitations."); *Gov't of Guam v. United States*, 744 F.2d 699, 701 (9th Cir. 1984) ("The merit of a

25   claim is irrelevant to operation of the bar of a statute of limitations.").

26
     [7] Even if the Court credited Plaintiffs' regulatory-notice argument, their claims would still be

27   untimely.  Plaintiffs allege that the DIR served them with a notice of levy on August 21, 2023.  FAC
     ¶¶ 47–48.  According to Plaintiffs, that notice complied with California Code of Regulations title 8,

28
                                                                          (Continued . . .)

Second, the continuing-violations doctrine does not revive Plaintiffs' stale claims.  Plaintiffs argue that each levy on Basilico's bank account constituted a new violation that restarted the limitations period.  Opposition at 12–14.  But the Ninth Circuit has squarely rejected Plaintiffs' theory in analogous circumstances.  *Knox*, 260 F.3d at 1013–15; *Thomas v. County of Humboldt*, 124 F.4th 1179, 1192 (9th Cir. 2024).

Although the continuing-violations doctrine applies to section 1983 actions and allows a plaintiff "to seek relief for events outside of the limitations period," the Ninth Circuit has "repeatedly held that a mere 'continuing *impact* from past violations is not actionable.'"  *Knox*, 260 F.3d at 1013 (citations omitted) (emphasis in original).  In *Knox*, for example, the court held that the continuing-violations doctrine was "inapplicable" where the California Department of Corrections repeatedly denied a plaintiff-attorney's client-visitation privileges after her license to practice law was suspended because those denials were "merely the continuing effect[s] of the original suspension."  *Id.*  In other words, the suspension was "the symbolic punch in the nose, triggering the statute of limitations," whereas the subsequent visitation denials were "more akin to developing problems as a natural consequence of the one and only punch, such as a bloody nose."  *Id.* at 1014–15.

The Ninth Circuit reached a similar conclusion in *Thomas*.  There, a plaintiff argued that his Eighth Amendment excessive-fines claim was timely because he continued to face the coercive effects of those penalties.  *Id.* at 1191–92.  The Ninth Circuit disagreed.  It explained that the plaintiff's claim accrued when he "knew or should have known he was subject to the penalties."  *Id.* at 1192.  The fact that the plaintiff "may continue to face the coercive effects of the heavy penalties" was "not enough to make his as-applied claim timely."  *Id.*; *Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008) ("[A] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation.").

In short, Plaintiffs' continuing-violations theory is simply foreclosed by *Knox* and *Thomas*.  Plaintiffs' alleged constitutional injury is Cal/OSHA's discrete, solitary act of issuing citations and penalties in June 2021.  Plaintiffs indisputably knew of that act by November 2021.  And Plaintiffs

---

section 333.  Opposition at 8–9.  Accepting Plaintiffs' allegations and argument, the statute of limitations would have accrued on their claims on August 21, 2023, and lapsed two years later, on August 21, 2025.  Plaintiffs, however, did not file this action until September 9, 2025.

identify no subsequent citation, penalty, or other enforcement action by Cal/OSHA that could constitute a new violation.  The DIR's later levies on Basilico's bank account do not change this analysis.  Those levies were not fresh constitutional injuries; they were ministerial collection efforts carried out by the DIR to enforce a final state judgment for the original unpaid penalties.  *See* RJN Ex. A, at 9–12; *see also* Cal. Labor Code § 6650.  The levies did not reopen, renew, or reissue Cal/OSHA's original citations and penalties.  Nor did they involve any new exercise of discretion.  The levies were simply the mechanical consequences of what Plaintiffs themselves characterized as the "original sin"—that is, Cal/OSHA's citations and penalties in June 2021.  Under *Knox*, such downstream consequences are merely the "bloody nose" that naturally follows from "the one and only punch."  *Knox*, 260 F.3d at 1014–15.  They are not new punches of their own.  Plaintiffs' attempt to repackage these routine collection efforts as independent violations is precisely the type of argument the Ninth Circuit has rejected.  *Knox*, 260 F.3d at 1013; *Thomas*, 124 F.4th at 1192.

Plaintiffs also appear to invoke California's continuous-accrual theory.  Opposition at 7 n.3, 13.  This state-law theory, which governs the accrual of a claim, is inapplicable to Plaintiffs' federal civil rights claims.  As noted, federal law, not state law, determines when a section 1983 claim accrues.  *Wallace*, 549 U.S. at 388; *Knox*, 260 F.3d at 1013; *see also Wostrel v. Arizona*, No. 22-cv-00312-PHX-DLR, 2023 WL 2308417, at *7 (D. Ariz. Mar. 1, 2023) (analyzing similar argument under Arizona law and concluding that plaintiffs' argument "is neither here nor there" because "federal law alone determines when a § 1983 claim accrues"), *appeal dismissed sub nom. Wostrel v. Wright*, No. 21-16151, 2023 WL 9860830 (9th Cir. Sept. 20, 2023).

Even assuming the state-law theory could apply to section 1983 claims, it could not be invoked here.  The continuous-accrual theory in California applies only where a defendant owes a plaintiff a continuing duty that is "susceptible to recurring breaches."  *Aryeh v. Canon Business Sols., Inc.*, 55 Cal. 4th 1185, 1200 (2013).  California courts have largely confined the theory's application to "a limited category of cases, including installment contracts, leases with periodic rental payments, and other types of periodic contracts that involve no fixed or total payment amount."  *Lamont v. Time Warner, Inc.*, No. 12-cv-08030-CAS-VBKx, 2012 WL 6146681, at *5 (C.D. Cal. Dec. 11, 2012) (citing *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal.

App. 4th 1375, 1388 (2004)).  Here, Plaintiffs do not allege that Cal/OSHA owed Plaintiffs any such continuing duty or that such a duty was susceptible to recurring breaches.  Nor do Plaintiffs allege any facts supporting the inference that their claims fall within the limited category of cases to which the continuous-accrual theory has been cabined.  Thus, even if the theory could apply to section 1983 claims generally, it would not apply to Plaintiffs' claims specifically.

In sum, Plaintiffs knew or reasonably should have known of the injury that underpins their federal civil rights claims by November 2021.  The statute of limitations thus accrued on Plaintiffs' claims by November 2021 and, under California's two-year statute of limitations, lapsed no later than November 2023.  Because Plaintiffs did not file this action until September 2025, their federal civil rights claims are time-barred and must be dismissed.

### 3.    Request for Judicial Notice

Federal Rule of Evidence 201 permits courts to take judicial notice of adjudicative facts that are "not subject to reasonable dispute" because they are either "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  When taking judicial notice of documents, a court must "specify what facts it judicially noticed." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (citation omitted).

A court may also deem documents incorporated into a complaint by reference, without converting a Rule 12(b)(6) motion into one for summary judgment, when a plaintiff "refers extensively to the document[,] or the document forms the basis of the plaintiff's claim." *Id.* at 1002 (quoting *United States v. Ritchie*, 342 F.3d 903,  907 (9th Cir. 2003)).  This doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* (citation omitted).  If a court deems a document incorporated by reference, it may assume the document's contents are true for purposes of deciding a Rule 12(b)(6) motion, unless doing so would "only serve to dispute facts stated in a well-pleaded complaint." *Id.* at 1003.

Defendants ask the Court to take judicial notice of three categories of documents and materials.  RJN at 2–6; *see id.* Exs. A–D.  Plaintiffs do not oppose Defendants' RJN, question the authenticity of any of the information contained in the exhibits attached to the RJN, or dispute the

accuracy of the sources from which such information derives.  For the reasons discussed below, the

Court grants Defendants' unopposed RJN.  *See Gjovik v. Apple, Inc.*, No. 23-cv-04597-EMC,

2025 WL 637931, at *8 (N.D. Cal. Feb. 27, 2025) (finding plaintiff's failure to oppose a request for

judicial notice constituted waiver of any argument challenging the request); *Cardenas v. Region 9

IV-D*, No. 23-cv-01220-JWH-JC, 2023 WL 9002726, at *1 (C.D. Cal. Dec. 28, 2023) (deeming

plaintiff's failure to oppose a request for judicial notice as "consent to the granting thereof").

(i)    State Court Documents

Defendants first ask the Court to judicially notice and deem incorporated by reference

various state court documents consisting of the Orange County Superior Court's May 24, 2023,

judgment against Basilico's, the citations and penalties imposed by Cal/OSHA in June 2021, and

various proofs of service of the judgment and the citations and penalties.  RJN Ex. A, at 9–33.

Documents on file in state court are proper subjects of judicial notice—not for the truth of

their contents but for the historical fact that they were filed.  *Harris v. County of Orange*, 682 F.3d

1126, 1132 (9th Cir. 2012).  The Court thus grants Defendants' request and takes judicial notice of

the following facts: (1) the existence, authenticity, and date of the state judgment against Basilico's

for $181,865.49; (2) the existence, authenticity, date, and amount of the penalties imposed on

Basilico's on June 17, 2021; (3) the certified mailings of notice to Basilico's at "21501 Brookkhurst

[sic] Street" and to Roman at "3857 Birch Street" on June 17, 2021; and (4) the state court clerk's

certification that notice of the state judgment was mailed to Basilico's on June 1, 2023.[8]

The Court also deems these documents incorporated by reference into the FAC.  Plaintiffs'

federal civil rights claims are founded on Cal/OSHA's citations and penalties, and Plaintiffs refer to

them extensively in the FAC.  *See, e.g.*, FAC at 1 ("Plaintiffs . . . bring this action against Gavin

Newsom . . . and [Cal/OSHA] for . . . unlawfully imposing a fine against Basilico's."); *id.* ¶¶ 57

(challenging "the excessive (and untimely) penalties levied against [Basilico's] by Cal-OSHA"), 66

---

[8] Plaintiffs dispute that they received Cal/OSHA's certified mailings in June 2021.  *See* Opposition
at 11–12 (claiming that "Tony Roman/Basilico's never received the notice of fines" contained in the
June 2021 mailings).  Consequently, the Court does not take judicial notice of Cal/OSHA's proofs of
service to establish whether Plaintiffs actually received the mailings of the citations and penalties.
Rather, the Court takes judicial notice to establish only that Cal/OSHA sent such mailings on
June 17, 2021, and that such mailings were addressed to Roman and Basilico's.

1    (claiming that Basilico's never received notice of the penalties before August 2023).  Plaintiffs' due

2    process claim is also largely predicated on the process afforded Basilico's in the underlying state

3    enforcement proceeding and the consequences that flowed from the judgment in that proceeding.

4    *See, e.g.*, *id.* ¶¶ 115–17 (alleging that Cal/OSHA "unlawfully seized and levied Basilico's bank

5    accounts" "without notice, without hearing, and without any opportunity for opposition to the same,"

6    and that Roman "never received any notice from Cal-OSHA . . . of the facts upon which this

7    assessment was based").  These documents are also integral to Plaintiffs' claims.  *See Mulinix v.*

8    *Unifund CCR Partners*, No. 07-cv-01629-DMS, 2008 WL 2001747, at *1 (S.D. Cal. May 5, 2008)

9    ("A complaint is deemed to include materials incorporated by reference and documents that,

10   although not incorporated by reference, are 'integral' to the complaint.").

11                          (ii)     YouTube Video

12           Next, Defendants ask the Court to take judicial notice of a YouTube video posted by

13   Plaintiffs on July 8, 2021, and five screenshots of that video.  RJN Ex. B, at 35–39; *see* Basilico's

14   Pasta e Vino Entertainment, *New Development: OSHA Trying to Extort Tony Roman & 'Basilico's*

15   *Pasta e Vino'?* (YouTube, July 8, 2021), https://perma.cc/A3Y5-QMVS.

16           The YouTube video's caption states: "We just discovered that on June 17, 2021, [Cal/]OSHA

17   proposed massive fines."  RJN Ex. B, at 35 (emphasis omitted).  A slide in the video displays the

18   specific sum of the penalties imposed by Cal/OSHA.  *Id.* at 36.  And other slides in the video convey

19   Plaintiffs' response to those penalties: "To the American traitors at [Cal/]OSHA, you don't have to

20   wait for a counter offer. . . .  My offer is this: nothing."  *Id.* at 37–39 (emphasis omitted); Basilico's

21   Pasta e Vino Entertainment, *New Development*, at 6:19–38 (quoting *The Godfather Part II*

22   (Paramount Pictures 1974)).  Plaintiffs acknowledge that Roman made these statements in the video.

23   Opposition at 6.  Because the facts established by the video are not subject to reasonable dispute, the

24   Court grants Defendants' RJN and takes judicial notice of the video's existence, date of publication,

25   and content, but not for the truth of any statement made in it.  *See Saunders v. Brown*, No. 21-cv-

26   09237-DSF-GJSx, 2022 WL 22970162, at *2 (C.D. Cal. Nov. 21, 2022) (granting unopposed request

27   for judicial notice of three YouTube videos).

28

1

(iii)    <u>Archived Webpage</u>

2    Finally, Defendants ask the Court to judicially notice a webpage maintained by Plaintiffs that

3 was archived by the Wayback Machine on November 27, 2021.[9]  RJN Ex. C, at 41–45; *see Story of*

4 *Our Fight*, The Constitutional Battleground, https://web.archive.org/web/20211127141118/https://

5 theconstitutionalbattleground.com/story-of-our-fight [https://perma.cc/2SR4-Q2D2].  In pertinent

6 part, the webpage contains the following statement:

7    [Cal/OSHA has] fined us $152,060.00. . . .  They too offered us an opportunity to
defend ourselves in hearings, to make changes to our operations[] in order to come into

8    compliance with lockdown related mandates, and to negotiate away the fines.  We have
ignored all correspondence, because we will not acknowledge any agency or agents of

9    the 'mini-dictators' enforcing these mandates.  We will give them no authority over us
in these ridiculous and tyrannical matters.

10

11 RJN Ex. C, at 44.

12    Courts in this circuit have routinely taken judicial notice of the contents of webpages

13 archived by the Wayback Machine as facts that can be accurately and readily determined from

14 sources whose accuracy cannot reasonably be questioned.  *See Gjovik*, 2025 WL 637931, at *8

15 (collecting cases); *UL LLC v. Space Chariot, Inc.*, 250 F. Supp. 3d 596, 604 n.2 (2017) (collecting

16 cases and taking judicial notice of images archived from defendant's webpages).  Plaintiffs offer no

17 reason to depart from that routine.  Indeed, Plaintiffs cite the larger website that contains the

18 archived webpage to support their allegation that "[Roman's] statements have been made on

19 numerous new[s] outlets, radio shows, in print, and on podcasts."  FAC ¶ 81 & n.6.  Because the

20 authenticity and contents of Plaintiffs' archived webpage are not subject to reasonable dispute, the

21 Court grants Defendants' RJN and takes judicial notice of the contents of the webpage as they

22 existed on November 27, 2021, but not for the truth of any statements contained therein.

23

24

25

26

27
───────────────
[9] The Wayback Machine is an online digital archive of webpages run by the Internet Archive, a

28 nonprofit library in San Francisco, California.  *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th
1364, 1374 (Fed. Cir. 2021).

1    **IV.    CONCLUSION**

2          For the reasons discussed above, the Court grants Defendants' Motion to Dismiss.  Plaintiff's

3    First Amended Complaint is dismissed, with leave to amend.[10]  Plaintiffs' amended pleading shall be

4    filed no later than 20 days from the date of this Order.

5

6    Dated: February 24, 2026

7                                                                 Hernán D. Vera
                                                                  United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    _____

26    [10] Ordinarily, leave to amend should be freely granted unless it is clear that the complaint could not
be saved by amendment.  Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*,

27    519 F.3d 1025, 1031 (9th Cir. 2008).  Although the Court has grave concerns about whether any of
Plaintiffs' legal theories can be amended to overcome the statute of limitations defects discussed

28    above, the Court cannot definitively say that any amendment would be futile.  Plaintiffs' separately-
filed motion to amend [Dkt. No. 21] is rendered moot by this Order.