Heather E. Gibson, Esq. (SBN #240938)
Stanley L. Gibson, Esq. (SBN #47882), *Of Counsel*
**LAW OFFICES OF HEATHER GIBSON, P.C.**
1871 Martin Avenue,
Santa Clara, CA 95050
Telephone: (408) 250-3502
Email: hgibson@gibsonhealth-law.com

K. Lawson Pedigo, Esq. (Texas SBN 15716500) (*Admitted Pro Hac Vice*)
**Miller Keffer & Pedigo, PLLC**
3100 Monticello Ave., Suite 4800
Dallas, Texas 75205
Telephone:  (214) 696-2050
Email:  klpedigo@mkp-law.net

Attorneys for PLAINTIFFS,
TONY ROMAN and BASILICO'S PASTA E VINO

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| TONY ROMAN, an individual, and BASILICO'S PASTA E VINO<br><br>Plaintiff,<br><br>vs.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California and in his individual capacity, Douglas L. Parker, in his official capacity as Deputy Chief of the California Occupational Safety and Health Department, and in his individual capacity, Debra Lee, in her official capacity as current Deputy Chief of Field Enforcement at the California Occupational Safety and Health Department, Jeffrey Killip in his official capacity as the Deputy Chief of the California Occupational Safety and Health Department and in his individual capacity, and, California Occupational Safety & Health; and DOES 1 to 20,<br><br>Defendants. | **CASE NO. 2:25-cv-08531-HDV-E**<br><br>**SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES** |

Plaintiffs, TONY ROMAN ("Roman") and his restaurant BASILICO'S PASTA E VINO ("Basilico's"), by and through the undersigned counsel, bring this action against Gavin Newsom, in his official capacity as California's Governor, and in his individual capacity, against Douglas L. Parker in his official capacity as Deputy Chief of Cal-OSHA and in his individual capacity, and against Debra Lee in her official capacity as Deputy Chief of Field Enforcement for Cal-OSHA, and against California's Occupational Safety & Heath Administration ("Cal-OSHA) for unlawfully acting under color of the California Labor Code, to include unlawfully imposing a fine against Basilico's in the amount of $185,979.84. Further, such wrongful actions by Defendants, acting under color of state law, violated the Plaintiffs' rights to due process guaranteed by the Fifth Amendment and imposed an excessive fine in violation of the Eighth Amendment of the U.S. Constitution, as those protections are guaranteed to citizens of California by the Fourteenth Amendment of the U.S. Constitution.

The Governor's Emergency Covid-19 restrictions did not provide legal authorization for Cal-OSHA to impose fines or seize bank accounts on the basis of a restaurant, such as Basilico's, refusal to force its patrons to wear masks, or because it remained open when other restaurants voluntarily chose to shut down. And, in any event, the fines at issue were (i) statutorily untimely when imposed by Cal-OSHA; and (ii) constitutionally excessive for alleged violations of Governor Newsom's Emergency-implemented Covid-19 restrictions in the absence of any illness, injury or death.

Instead of docile compliance and succumbing to Cal-OSHA's (and the Governor's) endless list of demands, Plaintiff Roman boldly and publicly proclaimed he disagreed with the Governor's usurpation of citizens' and business owners' rights by arrogating to himself the Emergency Powers under Executive Order N-60-20, and through the illegal means Cal-OSHA employed against the Plaintiffs. The Plaintiffs'

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

open defiance and refusal to surrender of their constitutional rights included renting a billboard on a busy Beverly Hills intersection criticizing the Governor's statewide masking requirements.  As detailed below, Roman made numerous television, radio, and podcast appearances in the exercise of his right to free speech. The Defendants were absolutely free to disagree with the substance of Roman's response to their actions; however, they were not allowed to illegally retaliate by imposing excessive fines against him or against Basilico's in violation of the Eighth Amendment to the United States Constitution.

Among other harassing actions, Cal-OSHA's response included unlawfully fining Basilico's for *Roman's* exercise of his First Amendment rights in an amount so disproportionate and excessive as to threaten Basilico's ability to survive. Plaintiffs seek damages, a declaration that the fines levied were unlawful and "excessive," and an injunction preventing Cal-OSHA's leadership from continuing to levy Basilico's, and other similarly situated businesses' bank accounts.

Critically, the most recent point in time that Basilico's was fined was on October 24, 2024.  The instant action was filed within two years of that point, on September 9, 2025, falling within the relevant two-year statute of limitations.

As the Ninth Circuit ruled in *Thomas v. County of Humboldt* (9th Cir.) 124 F.4th 1179 (2024) :  "When the continued enforcement of a statute inflicts a continuing or repeated harm, a new claim arises (and a new limitation period commences) with each new injury." (Citing *Flynt,* 940 F.3d at 462. In the excessive fines context, each imposition of a challenged fine is a new, distinct injury. See U.S. Const. amend. VIII (prohibiting "excessive fines imposed" (emphasis added)); cf. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."). Because

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

Olson alleges that the County imposed penalties on her well into the limitations period, and each imposition was a new unlawful act, Olson's as-applied challenge is not time-barred…" (Id. At 1193.) Here, because Plaintiffs' as applied challenge to the October 24, 2024, levy on Basilico's bank account, like Olson's fell within two years of the filing of the instant lawsuit, their claims fall within the applicable statute of limitations.

## I.    FACTUAL BACKGROUND OF PLAINTIFFS

1.    Plaintiff Tony Roman is the son of a first-generation Italian American, Rosemarie Roman (hereinafter, "Rosemarie"), whose parents came to America in the 1920's from Abruzzo, Italy.  In 1943, after her parents had been in this country over twenty years, Rosemarie was born in Pittsburgh, Pennsylvania, and this is where she was raised. From her parents, Rosemarie was instructed in their Italian traditions and heritage, to include being taught how to prepare Italian cuisine. This particular skill proved *personally* useful as Rosemarie raised 6 children of her own.  She also loved to prepare Italian meals for her extended family and friends—and did so frequently. Knowledge of her excellent culinary skills and ability to prepare Italian homestyle meals earned her a reputation which spread throughout the neighborhood (and beyond).

2.    As acclaim for her expertise as a chef specializing in preparing authentic Italian dishes grew, Rosemarie's friends and family began encouraging her to open a restaurant. After years of receiving this encouragement, Rosemarie did just that.  In June of 1999, Rosemarie opened Basilico's Pasta e Vino restaurant (i.e., the Plaintiff) located at the intersection of Magnolia and Yorktown in Huntington Beach, California. She named her restaurant "Basilico's" in honor of her father, Antonio Basilico.

3.    Over the ensuing eighteen years, Rosemarie took great satisfaction in operating Basilico's and serving authentic Italian cuisine in her own Italian-American style to

the Huntington Beach community. The restaurant was so successful that Rosemarie even offered full-service catering for weddings, reunions, birthday and graduation parties. Marriage proposals made at Basilico's became popular as it attained icon status in Huntington Beach.

4.     Unfortunately, between 2013 and 2014, Rosemarie's health began to decline. It was during these periods of hospitalization when her son Tony, also a Plaintiff, assumed an increasingly active role managing Basilico's. He did this to ensure (i) the restaurant would continue to thrive, and (ii) so that his mother's high standards for serving the best Italian cooking were maintained.

5.     In 2017, Roman designed and built a new venue for Basilico's restaurant. in honor of his mother and to gift it to her. He did so to pay tribute to his mother, and for her hard work and sacrifice building a successful business which had become an integral part of the community's culture. While the new location was more updated and upscale, Basilico's continued to serve the same high-quality authentic Italian food with top-notch service and staff. Indeed, Basilico's staff was well-known for remembering their customers' names and their favorite dishes thus enhancing the warm and cozy Italian atmosphere for the restaurant's patrons. Basilico's was continuing to flourish as it remained true to its successful roots inspired by Tony's mother, Rosemarie Roman.

**COVID-19 COMES TO THE UNITED STATES**

6.     The factual vanguard to this lawsuit appeared in January of 2020, when Roman became aware of reports that China was "locking down" its citizens in response to a new disease known as "Covid-19." It was reported that government officials even went so far as to weld shut the doors of its citizens' homes to seal them inside (ostensibly to stop the spread of Covid-19). Roman theorized that since China was run by communists, and its citizens had a long history of suffering under oppressive actions imposed on them by their authoritarian government, he was not surprised the

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

Government of China implemented such brutal policies—since it could do so without fear of reprisal or resistance from its citizens. However, he never imagined in the United States, a nation rooted in the principles of individual liberty and freedom, any government entity could so aggressively suppress its citizens' rights, even during a public health challenge such as the one presented by Covid-19.

7. This case is about the damages suffered when an upstanding and law-abiding Californian citizen (and his family's very successful business) dared to demand the state of California follow existing law and recognize the lawful exercise of his constitutionally guaranteed rights.

## II. PARTIES

8. Plaintiff Tony Roman, at all relevant times to the causes of action raised in the Complaint, was a resident of California who lived within this District, and who was the principal owner and operator of Basilico's.

9. Plaintiff Basilico's Pasta e Vino, with an address of 2501 Brookhurst Street in Huntington Beach, California, is a single location and family-owned restaurant which has operated for 25 years overall and eight years from its current location, serving classic, homestyle Italian food in Huntington Beach, California.

10. Defendant Cal-OSHA, with its headquarters located at 1515 Clay Street, Suite 1901, Oakland, California, has an 'enforcement office' with an address of 320 West 4th Street, Suite 820, Los Angeles, California. Cal-OSHA has investigatory powers delegated to it pursuant to California Labor Code § 6315. These powers authorize Cal-OSHA to direct "accident investigations involving violations of standards, orders, special orders, or § 25910 [pertaining to asbestos exposure] of the Health and Safety Code, in which there is a serious injury to five or more employees, death, or request for prosecution by a division representative." California Labor Code § 6317 permits citations and/or imposition of a civil penalty following an investigation. However, Cal-OSHA's § 6317 ("§ 6317") penalty authority is carefully constrained

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

and to be appropriate must take into consideration: (a) the size of the business, (b) the gravity of the violation, (c) the good faith of the employer, and (d) whether there has been a history of violations. Of cardinal importance in this litigation, Cal-OSHA is *prohibited* from issuing any citation or notice under Labor Code § 6317(2) for a given violation in the event that six months or more have elapsed since the occurrence of the violation.

11.    Defendant Gavin Newsom, ("Newsom") who is named as a Defendant in his official capacity, and in his individual capacity, was, and is, the Governor of the State of California. On information and belief, Governor Newsom directed the unlawful actions taken by various government agencies pursuant to his Emergency-implemented Covid-19 restrictions, including, but not limited to, Cal-OSHA's retaliation against Basilico's and Roman as described below in the Complaint. Moreover, Newsom's directives clearly violated established rights of which a reasonable person would have been aware.

12.    On further information and belief, Newsom took action to stifle the rights of small business owners, including Plaintiffs, and continued to encourage and permit the imposition of fines such as those levied against Plaintiffs even after the decision in *National Federation of Independent Business v. Department of Labor, Occupational Health and Safety Administration* (2022) 142 S. Ct. 661,, which established that OSHA had no jurisdiction to enforce any requirements pertaining to non-workplace safety hazards such as Covid-19.

13.    Defendant Douglas L. Parker ("Parker") was the Chief of Cal-OSHA between approximately 2019 and November 2, 2021, when Cal-Osha first began "investigating" Basilico's and attempting to thwart its business. On information and belief, Douglas L. Parker had a business address at 1515 Clay Street, Suite 1901, Oakland, California, at all relevant times mentioned herein. Douglas L. Parker is sued in his official capacity as the Chief of Cal-OSHA and in his individual capacity.

Parker's directives while in the capacity of Deputy Chief of Cal-OSHA clearly violated established rights of which a reasonable person would have been aware.

14.    On information and belief, Defendant Jeffrey Killip became the Deputy Chief of Field Enforcement for Cal-OSHA in 2022 and remained in that position until approximately June 5, 2024. His official business address was listed at 1515 Clay Street, Suite 1901, Oakland, CA 94612 at all relevant times herein. He is sued in his official capacity as the former Deputy Chief of Field Enforcement for Cal-OSHA and in his individual capacity for attempting, under color of law to enforce unconstitutional requirements upon Roman and Basilico's.

15.    On information and belief, Defendant Debra Lee became the Deputy Chief of Field Enforcement for Cal-OSHA on or about June 6, 2024, and remains in that position today. Her official business address is listed as 1515 Clay Street, Suite 1901, Oakland, CA 94612. She is sued in her official capacity as the Deputy Chief of Field Enforcement for Cal-OSHA and in her individual capacity for attempting, under color of law, to enforce unconstitutional requirements upon Roman and Basilico's, causing financial damage to both.

## III.    **JURISDICTION AND VENUE**

16.    This Court has federal question jurisdiction under 28 U.S.C. §1331 and § 42 U.S.C. § 1983, because the federal law claims arise under the Constitution and statutes of the United States. On or about February 14, 2025, Basilico's submitted appropriate government tort claims to both the County of Los Angeles and the State of California. Without providing any response or attempted justification of its adverse findings against Basilico's to substantiate a violation of the Governor's Emergency Order on Covid-19, on or about March 20, 2025, Orange County issued a denial of liability. The state of California entirely failed to respond, resulting in an operative

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

denial of Plaintiff's claims by approximately March 20, 2025.  Plaintiffs' claim is timely filed within 6 months of the Plaintiffs' government tort claim against the State of California being denied by operation of the state of California's failure to provide any response under the California Government Code.

17.    Venue is proper in this District under 28 U.S.C., §§ 1391(b)(1) and (2) because Plaintiffs Roman and Basilico's have purposefully subjected themselves to jurisdiction in this District, Basilico's is located in this District, and all of the actions and omissions injuring Plaintiffs took place in this District. Defendants are sued for official actions or in their official capacities and therefore their residences for the purpose of determining venue are within this district where their official duties are performed.

18.    This Court may issue a declaratory judgment and grant injunctive relief pursuant to 28 U.S.C., §§ 2201-2202 and under the precedent set in *Ex Parte Young*, (209 U.S. 123 (1908) holding that if government officials attempt to enforce an unconstitutional law, sovereign immunity does not prevent people whom the law harms from suing those officials in their individual capacity for injunctive relief because they are not acting on behalf of the state in this situation

19.    This Court may further grant monetary damages as against those defendants who are named in their individual capacities as against any defendant who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjected, or caused to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. (See *Hafer v. Melo* et al 502 U.S. 21 (1991).  These individually named defendants, in this case, Newsom, Killip, Lee and Parker, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress under 42 U.S.C. section 1983 given that each of these defendants acted under color of law in pursuing, fining, and prosecuting

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

Plaintiffs even in the wake of the *National Federation of Independent Business v. Department of Labor, Occupational Health and Safety Administration* (2022) 142 S. Ct. 661, 655) decision.

20.    The addition of Defendants Debra Lee, Jeff Killip, and Douglas L. Parker are permissible under Fed.R.Civ. Proc. 15(C)(1)(B) and 15(C)(1)(C) given that their addition as Defendants relates back to the original filing of Plaintiff's Complaint. Moreover, each have been timely added as defendants within two year of the October 24, 2024 levy upon Basilico's bank account.

## IV.    THE DEFENDANTS' UNLAWFUL CONDUCT TARGETING THE PLAINTIFFS

21.    Roman first realized his beliefs about the protections of our cherished freedoms guaranteed to all American citizens were under attack when he learned that San Francisco would be the first city in the United States to shut down due to Covid-19 concerns. While disappointed, he was not surprised, considering the prevailing political views of its residents. He still believed the rest of California would surely not adopt the same course of authoritarian conduct. Unfortunately, the wanton disregard of the rights of citizens living in Northen California presaged the treatment that would be suffered by all Californians.

### A.    *UNLAWFUL C-OSHA DIRECTIVES TARGETING SMALL BUSINESSES.*

22.    To this end, on or about March 4, 2020, California Governor Gavin Newsom issued Executive Order N-33-20 which stated, "I find it necessary for all Californians to heed the State public health directives from the Department of Public Health;" and that he purportedly acted under the authority of Government Code §§ 8567, 8627, and 8665. Order N-33-20 further required, "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors…." Order N-33-30 further assumed its authority under Health and Safety Code §§ 120125, 120140,

---

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

13100, 120130(c), 120135, 120145, 120175 and 120150. In § 3 of this order it states that, "The Office of Emergency Services is directed to take necessary steps to ensure compliance with this Order." This Executive Order claimed to be enforceable pursuant to Government Code § 8665. However, this action by Defendant Newsom was *ultra vires* as it involved "major questions"[1] requiring legislative authorization. Such legislation did not exist and consequently the contested Executive Order exceeded the lawful authority of the Governor's office.

23.    Thus, Newsom was attempting to enforce an unconstitutional set of laws, and therefore, sovereign immunity should not be an applicable defense because this set of unconstitutional laws significantly harmed, and continues to harm, Plaintiff. Further, Newsom acted under color of law in enacting these requirements, even after the National Federal matter had been decided, thus making him susceptible to damages personally under the precedent in *Hafer v. Melo* 502 U.S. 21 (1991))

24.    Governor Newsom's statewide Covid-19 stay-at-home order took effect on March 19, 2020, when small businesses all over California-—including restaurants like Basilicos's—were deemed "non-essential" by Governor Newsom and ordered to shut down and stop serving customers.[2] This was the nation's first statewide lockdown. Millions of California workers were also classified as "non-essential" and told to stay home, shut themselves in their homes or apartments, and wait. Eventually, as this forced isolation period became longer and longer, prohibitions targeting those bold enough to travel outside of their homes were implemented as the government attempted to force face masks on these citizens.

---

[1]  See *Alabama Assn. of Realtors v. Department of Health and Human Servs.*, 594 U. S. 758 (2021) ("We expect Congress to speak clearly when authorizing an agency to exercise powers of vast economic and political significance." (Id. at 764, citing *Utility Air Regulatory Group v. EPA, 573 U.S. 302, 324, 134 S.Ct. 2427, 189 L.Ed.2d 372 (2014) (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 160, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000)).*

[2]  No distinction for the dissimilar latitude afforded the famous French Laundry restaurant has been published by any sector of the California legislative or executive branches.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

25.    On or about May 20, 2020, Gavin Newsom signed Executive Order N-60-20. In relevant part, it states that "California law promotes the preservation of public health by providing for local health officers-appointed by county boards of supervisors and other local authorities-in addition to providing for statewide authority by a State Public Health Officer; and WHEREAS these local health officers, working in consultation with county boards of supervisors and other local authorities, are well positioned to understand the local needs of their communities …."

26.    Order N-60-20 further required all residents of the state of California to "obey State public health directives.…" Ostensibly, this included all Cal-OSHA regulations, even through 2022, after they had been deemed unenforceable under the *National Federation* precedent.

27.    Governor Newsom attended a gathering for a birthday party at the famous French Laundry restaurant after he had initiated "lockdowns" and restaurant shutdowns across the state of California. While Newsom locked down counties across the state, he allowed Napa County to remain operational without restrictions. Both the French Laundry and Newsom's own winery (on information and belief) are located in Napa County.[3]

28.    On or about November 30, 2020, Cal-OSHA purported to implement the "Emergency Covid-19 Prevention Regulations" (hereinafter referenced as the "ETS").  This sweeping set of regulations was premised upon Cal-OSHA's position that it was the arbiter of how California employers should be obligated to distance their employees, require masks, engage in contact tracing, shut down, and implement Covid-19 "prevention programs" among other requirements.

29.     These "emergency" ETS regulations did not expire until February 3, 2025.

---

[3]    https://www.politico.com/states/california/story/2020/11/13/newsom-faces-backlash-after-attending-french-laundry dinner-party-1336419.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

30.    Cal-OSHA derives its powers from the California Occupational Safety and Health Act of 1963, ("OSHA") codified into Labor Code §6300-6332.  OSHA was allegedly enacted, "for the purpose of assuring the safe and healthful working conditions of all California working men and women by authorizing the enforcement of effective standards, assisting and encouraging employers to maintain safe and healthful working conditions…." (See California Labor Code § 6300). Cal-OSHA does *not* have authority to regulate non-health and/or safety related aspects of a business. The Emergency Order issued by Defendant Newsom was relied on by Cal-OSHA to take the actions against Plaintiff complained of herein was an *ultra vires* act as it involved "major questions" requiring legislative authorization. Such legislation did not exist and consequently the contested Executive Order exceeded the lawful authority of the Governor's office and was not a legal basis upon which Cal-OSHA could take the actions harming the Plaintiffs raised by the Complaint.

31.    Further, Cal-OSHA does not have the authority to investigate or otherwise penalize California small businesses such as Basilico's based on any Covid-19 related regulation because the Courts have deemed Covid-19 to *not* be a work-related danger or an occupational hazard. (*See National Federation of Independent Business v. Department of Labor, Occupational Health and Safety Administration* (2022) 142 S. Ct. 661, 655).[4] This ruling blocked a Covid-19 vaccine mandate enacted by the US Department of Labor Secretary under the Occupational Health and Safety Act. The decision in *National Federation of Independent Business* was premised on two interrelated findings: First, that the general OSHA law was intended to only apply to workplace and work-related dangers and occupational hazards; and second, Covid-19

---

[4] *National Federation of Independent Business v. Department of Labor, Occupational Health and Safety Administration* (2022) 142 S. Ct. 661, citing to." *Alabama Assn. of Realtors v. Department of Health and Human Servs.*, (2021) 594 U.S.758.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

did not qualify as a "work related danger" or an "occupational hazard" under the general OSHA law.

32.    Likewise, Labor Code § 6403—which is part of the statutory framework underpinning the California Occupational Safety and Health Act, only applies to actual "occupational hazards" unique to the workplace of an employee. In light of the Supreme court's findings in *National Federation*, ruling that Covid-19 is not an occupational hazard under the Federal OSHA law, it would have been impossible for Basilico's to violate the equivalent general Cal-OSHA law (Labor Code § 6403) or have been required by this statute to force its patrons to wear masks, or shut down.

33.    Despite the foregoing, Douglas L. Parker, the Deputy Chief of Cal-Osha beginning in 2019, began enforcing Newsom's unconstitutional edicts, under color of law, and demanding the shutdown of small businesses and restaurants, forced masking of restaurant patrons, and limitations on capacity and spacing requirements including but not limited to at Basilico's restaurant through Cal-OSHA.

34.    Doug Parker has consistently attempted to make Covid era restrictions in the workplace permanent, stating in an interview in 2022 that, "the most urgent rulemaking for the federal government's worker safety agency is enacting a permanent Covid-19 standard for the health-care industry" and further that, "It's the occupational hazard of our time and we'll continue to treat it like that as long as necessary" irrespective of the scientific community's perspective on this issue.[5]

35.    Parker's successors, Jeffrey Killip and Debra Lee similarly continued to attempt to enforce Newsom's unlawful edicts, with Killip acting as the Chief Deputy of Field Enforcement for Cal-OSHA in 2023 while levying egregiously high penalties

[5] https://news.bloomberglaw.com/safety/covid-19-regulation-still-on-agenda-osha-chief-doug-parker-says-1

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

and fees against Basilico's, and Lee, without hesitation, attempting to continue the enforcement actions by continuing to levy Basilico's business operating account through October 21 of 2024—long after the court's holding in *National Federation*.

36. **No Covid-19 Enhanced Regulatory Authority.** Based on the Court's *National Federation of Independent Business* holdings, Parker, Killip and Lee, in directing Cal-OSHA, never lawfully had the authority to issue citations, fines, or implement any other adverse action against any single location, family-owned restaurant based on alleged failures to abide by California's state mandated Covid-19 restrictions, including but not limited to: (i) forced masking of patrons and staff; (ii) forced limited hours of operation; (iii) forced closures; (iv) forced capacity limitations, and/or (v) forced Covid-19 vaccinations.

37. Even assuming, inter alia, regardless of the retrospective unreasonable implementation of such Covid-19 restrictions selectively enforced to attack Californian's exercise of their most basic constitutionally protected freedoms critical of the Defendant's illegal actions, as a matter of law, the Defendants did not have the authority,- as applied to Plaintiffs specific case, to enforce draconian and excessive fines against them in violation of the Eighth Amendment.

38. **No Covid-19 Increased Power to Impose Financial Sanctions.** Parker, Killip, and Lee, acting to direct Cal-OSHA did and do have limited power to impose fines in certain circumstances. However, those circumstances are coextensive with Cal-OSHA's statutory regulatory authority and (generally) limited to issues that affect employee safety and health but which are not at issue in this case. Since the Court has ruled in *National Federation of Independent Business* that Covid-19 related mandates do not qualify as relating to work related dangers or occupational hazards which Cal-OSHA has the authority to regulate, *a fortiori* there is no power to penalize that same subject matter.

---

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

39.    On information and belief, and based on the information set forth below, even under the ETS, Parker, Killip and Lee, while acting as chief of Cal-OSHA, *never* had the authority to require any California employer, including Basilico's to shut down their workplace or force masking on patrons as a consequence of Covid-19. Importantly, every unlawful action of the Defendants targeting the Plaintiffs was founded on the illegal ETS regulatory regime. Nevertheless, Parker, Killip and Lee have continued to act under color of these unconstitutional edicts to directly harm and punish Roman and Basilico's for their defiant exercise of free speech as set forth herein. On this basis, and each may be held personally liable on this basis under the precedent set in *Hafer v. Melo* 521 U.S. 21 (1991).

### B.    *BASILICO'S RESPONSE TO CALIFORNIA'S DRACONIAN GOVERNMENT REQUIREMENTS.*

40.    Basilico's was determined not only to remain open—despite California's state government's unlawful and obsessive attempts to force shutdowns, but to also fight against what Roman viewed as tyranny, even pledging his business as a "Constitutional Battleground" in honor of those who have risked and sacrificed everything in defense of liberty and freedom, our Founding Fathers, and the brave heroes of our military.  Basilico's became a beacon of freedom for California citizens who knew that they should never have been classified as "non-essential" and that the government should never have the power to shut down law abiding people and businesses.

41.    Roman took the position that the United States was not a country that was built to be locked down, given that it was built on principles of liberty and freedom, and he vowed to do his part to defend these precious precepts.  Thus, on March 19, 2020, the first day of the "lockdowns," when all businesses not deemed to be worthy of continuing operations during Covid-19 were ordered to close, Roman kept his business open without any restrictions. To counter the government's action, he even

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

banned masks from the property. He was determined to keep his business open as a battleground in the fight, announcing that Basilico's would take a stand for freedom, and would never shut down at the government's direction.

42.    Roman became an outspoken critic of Governor Gavin Newsom's policies, including Government mandated "lockdowns" and forced masking, as well as restrictions on the operations of small businesses–such as Basilico's. He garnered a certain amount of notoriety from speaking out against these state government tactics while also attracting a following of individuals who agreed with his public stance on Covid-19 related restrictions and his opposition to unlawful government overreach. His vigorous opposition to the Defendants' conduct and policies was widely known throughout California, national and even internationally, due to the circumstances surrounding the exercise of his constitutionally protected right to express his outrage and grievances and seek to hold California politicians accountable. By way of example:

- On or about June of 2020, the LA Times published an article featuring Basilico's explaining that Basilico's management would not permit masked patrons to enter the restaurant.

- Shortly thereafter, Roman appeared on KTLA news criticizing government mandates and explaining that he would not allow masks inside his restaurant.

- On or about October 30, 2020, Roman appeared on a show called "The Highwire" in which he again explained that masks would not be permitted in Basilico's. The show further featured an actress who claimed that the restaurant was at "100% capacity" when her father went in to pick up his take-out meal.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

- Roman further explained that his restaurant had a Billboard put up near a high-traffic intersection that stated. "Leave the Mask, Take the Canoli" with imaging resembling that of the "Godfather" film.

- Roman continued on with his media blitz, appearing in the highly popular "Dennis Prager" podcast, wherein the description of Roman's appearance was advertised as, "….Dennis talks to Tony Roman, owner of Basilico's Restaurant in Orange County. He has operated in open defiance of Newsom's lockdown restrictions."

- In August of 2021, he followed up with an appearance on the Andrew Cuomo show, later featured by Newsmax, with a description stating, "California restaurant owner Tony Roman wants your proof of being UN-vaccinated. He took on CNN's Chris Cuomo about his policies and speaks to Grant Stinchfield about the experience."

43.     Roman continued to speak out on various news outlets every few months throughout 2022.  He consistently attacked these *policies* by reiterating his sincerely held belief that the government should never have the authority to lock anyone down, force people visiting businesses to wear masks, or to force any business to shut down allegedly because of Covid-19.[6]

44.     Some small business and restaurants in the Huntington Beach area, and across California, attempted to defy Cal-OSHA and Governor Newsom's Health edicts, but did so during the second lockdown period after already shutting down once in compliance. These restaurants were not involved making public media appearances criticizing the government's Covid-19 restrictions. In contrast, Basilico's as well as Tony Roman (and his team) did all of these things, standing alone in open defiance to

---

[6] He also knew not everyone agreed with him and, as a result of his positions on California's enforcement of shutdowns and wearing masks, he received harassing calls, negative social media posts, and even a death threat. The right to peacefully dissent is the badge of a healthy republic.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

the unlawful usurpation of individual Californias' rights embodied by in Newsom's ETS. As a result, Roman's media notoriety did not go unnoticed by California's government authorities. It wasn't long after he had committed to his position as a pro-freedom small business owner—who did not believe that the government should have the authority to shut down his business and lock down American citizens—when the government unlawfully retaliated.

### C.    *RETALIATORY INVESTIGATIONS OF BASILICO'S WITH NO LAWFUL PREDICATE.*

45.    Shortly after Roman's decision to keep Basilico's open, he began receiving a voluminous amount of phone calls. Many of the calls included threats and some even included death threats. Around the time when the negative phone calls and 'hate mail' were being received, Roman received a visit from a Lieutenant from the Huntington Beach Police Department who advised him to 'shut down or face consequences.' While the officer left Basilico's initially without incident, within several days, on August 20, 2020, the Orange County Health Care Agency found it necessary to conduct an "inspection" of Basilico's based on claims made by alleged "people" who had "reported" that Basilico's had the temerity to remain open for business. Roman and Basilico's were targeted by the city, county, state, federal, the media, Hollywood and fellow citizens who threatened to burn the restaurant down, and even kill him, while their own landlord who opposed his actions attempted to evict the business in retaliation all for opposing the unlawful ETS regime…a courageous position which has now been vindicated by the U.S. Supreme Court.

### 1. Cal-OSHA's Crackdown.

46.    Not long after the series of incidents related to the CAB referenced above, and while Parker was acting as the chief of Cal-Osha, a Cal-OSHA agent wearing a mask arrived at Basilico's premises during business hours. He was not permitted inside. He admitted that Basilico's had been targeted by Cal-OSHA to be penalized by the State

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

of California given Roman's outspoken criticisms of Governor Newsom, Covid-19 related shutdowns of small businesses, mask mandates and vaccine mandates.

47.    On or about August 20, 2020,  acting under Parker's authority and under color of law, Cal-OSHA cited Basilico's for alleged "disturbance of the neighborhood…injurious to health, safety, convenience, morals, violation of Cal. Business and Professions Code § 25601." Again, Cal-OSHA's *entire* foundation for selectively targeting the Plaintiffs is based on Basilico's refusal  to obey Governor Gavin Newsom's unlawful Executive Orders N-33-20 and N-60-20 which prohibited indoor operations.

48.    It is the alleged violation of these various "health orders" and other unconstitutional obstacles which provides bureaucracies with a pretext to punish protected speech and extinguish rights and privileges most Americans hold sacrosanct. A collateral consequence administrative agencies such as OSHA achieve from threatening a noncompliant restaurant owner like Roman is the inevitable self-censoring from other members of the regulated group who will not risk losing their livelihood in a fight with an unscrupulous and powerful state agency.

49.     There is not now, and never has been, a dispute that Cal-OSHA is responsible for occupational safety, as opposed to the regulation of public health in general. Cal-OSHA *does not* have the authority to invade the jurisdiction of those state agencies authorized to regulate in these areas or to fine any small business, such as Basilico's for alleged failure to adhere to any Covid-19 mandate pertaining to forced masking or forced shut down of business.

50.     In total disregard of its legislatively defined mandate, throughout the Spring of 2020 through the end of 2021, Cal-OSHA, acting under Parker's leadership, launched an unprecedented investigation into Basilico's operations, showing up with an alleged warrant in one instance, unfounded demands to inspect its interior in another, and demands that Basilico's force its patrons to wear masks.

---

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

51.    Plaintiffs allege that Cal-OSHA, acting under Parker's leadership, was intent on disrupting Basilico's business, sending masked Cal-OSHA agents to its premises on multiple occasions in 2020, demanding entrance into the restaurant. Each time they were turned away by Roman and his staff and no entry was allowed.  This campaign of intimidation and business interruptions was pursued by the various Cal-OSHA workers who showed up at Basilico's over a period of months, finally warning of returning with a Search / Inspection Warrant. On January 18, 2021, Cal-OSHA agents did return with a warrant, along with a police escort of several patrol cars sent by the Huntington Beach Police Department. Once again, Cal-OSHA representatives were refused entry by Roman and sent away. During the Cal-OSHA agent's interaction with Roman, he admitted that Basilico's was targeted due to its outspoken defiance of the lockdown mandates. Video evidence was captured of the Cal-OSHA agent's admission of the lack of legal basis for this unlawful demand but that it was predicated on an improper motivation.

52.    On or about November 5, 2020, Basilico's received a claim from OSHA that one of their employees had allegedly complained via email about their working conditions. The name of the person filing the complaint had never been employed at Basilico's and was a name not recognized by Roman and his staff. The email correspondence came from: Calosha@dir.ca.gov. On information and belief, none of Basilico's employees had ever complained about working conditions to Cal-OSHA, and this was simply a "make believe" allegation without any merit.

53.    It is the alleged violation of these various "health orders" and other unconstitutional obstacles which provides bureaucracies with a pretext to punish protected speech and extinguish rights and privileges most Americans hold sacrosanct. A collateral benefit administrative agencies such as OSHA derive from threatening a noncompliant restaurant owner like Roman is the inevitable self-

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

censoring from other members of the regulated group who will not risk losing their livelihood in a fight with an unscrupulous (but powerful) state agency.

54.    On or about November 30, 2020, Cal-OSHA, acting under Parker's guidance as the then Chief enforcement officer, purported to implement the "Emergency Covid-19 Prevention Regulations" (i.e., "ETS").  This sweeping set of regulations was premised upon Cal-OSHA's claim that it was the arbiter of how California employers should be obligated to distance their employees, require masks, engage in contact tracing, shut down, and implement a Covid-19 "prevention program" among other requirements.  These "emergency" regulations expired on February 3, 2025.

55.    On information and belief, and based on the information set forth below, even under the ETS the Cal-OSHA *never* had the authority to require any California employer, including Basilico's, to shut down their workplace or force masking on patrons as a consequence of Covid-19. However, even if this Court determines that Cal-OSHA did have the authority to fine Plaintiffs, the fines ultimately levied against Plaintiffs were so excessive in comparison with other similar cases as to be found unconstitutional under the Eighth Amendment on an "as applied" basis.

56.    On or about January 8, 2021, while Cal-OSHA was still operating under Parker's authority and guidance, the California Department of Industrial Relations, which oversees Cal-OSHA, submitted correspondence to Basilico's stating that a warrant had been issued by the Division of Occupational Health and Safety ("OSHA") citing California Civil Code § 1822.56. A single witness identified as "Cooper Carasco" an alleged employee of Basilico's was named in the warrant. The Complaints listed therein included, "not allowing masks."  However, nobody by the name of "Cooper Carasco" had ever been employed by or worked as an agent for Basilico's. Thus, on information and belief, Plaintiffs allege that "Cooper Carasco" was an imaginary name fabricated by Cal-OSHA for the unlawful objective of obtaining a warrant it had no authority to execute.

57.    It is the alleged violation of these various "health orders" and other unconstitutional obstacles which provides bureaucracies with a pretext to punish protected speech and extinguish rights and privileges most Americans hold sacrosanct.

**D.    CAL-OSHA LEVIES UNPRECEDENTED FINE *AFTER* AUTHORIZED TIME EXPIRES.**

58.    On or about August 21, 2023, Basilico's received written notice that Cal-OSHA, on information and belief, under the direction of Killip, had levied a fine against it in the amount of $185,979.84, pursuant to the Department of Industrial Relation's authority. This notice was based on complaints Cal-OSHA claimed it had received because of Basilico's refusal to shut down as well as its refusal to force its patrons to wear masks in 2020—and potentially 2021.

59.    Labor Code § 6317(2) requires that "No citation or notice shall be issued by the division for a given violation…after six months have elapsed since the occurrence or the violation." In the instant case, the "occurrence or the violation" for which Cal-OSHA attempted to levy a fine necessarily must have occurred in 2020, or early 2021, at the latest. However, the formal Notice of Levy was not provided until August 21, 2023. This was well over a year after any alleged "occurrence" would have taken place.

60.    In sum, not only did Cal-OSHA acting under the direction of Parker, Killip or Lee *not* have the power or authority to fine Basilico's so much that its existence was threatened, its attempt to do so was in direct violation of the timeliness requirements set forth in the California Labor Code.

**E.    CAL-OSHA FINES AND ACCOUNT SEIZURES ARE UNLAWFUL AND A PRIORI EXCESSIVE.**

61.    Because all the civil penalties imposed and actions to seize Basilico's property were based on alleged Covid-19- related orders and/or regulations that Cal-OSHA did

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

not have the power or authority to issue, irrespective of whose direction it was acting under, they are void as a matter of law. See *National Federation of Independent Business* at 127 (and ¶¶'s 25-26, above) wherein the Court stated: "The question before us is not how to respond to the pandemic, but who holds the power to do so. The answer is clear: Under the law as it stands today, that power rests with the States and Congress, not OSHA. In saying this much, we do not impugn the intentions behind the agency's mandate. Instead, we only discharge our duty to enforce the law's demands when it comes to the question who may govern the lives of 84 million Americans. Respecting those demands may be trying in times of stress. But if this Court were to abide them only in more tranquil conditions, declarations of emergencies would never end and the liberties our Constitution's separation of powers seeks to preserve would amount to little."

62.    Cal-OSHA, acting at the direction of Parker, Lee and Killip, under color of law, directly and intentionally targeted small businesses, including Basilico's, attempting to drive them out of business via the imposition of fines so unconscionably high that they could never be paid. By way of example only, under California Code of Regulations Title 8, Article 4, § 336, (c)(2), Cal-OSHA's fine for causing serious injury, death, illness or exposure is $25,000.00. Basilico's was fined nearly *eight times* that amount, and never once had an incident of illness, exposure, death or serious injury that Cal-OSHA "investigated" or otherwise inquired about.

63.    On information and belief, no other California restaurant with a single location was charged anywhere near as much as Basilico's for ongoing Covid-related violations. Instead, other restaurants that defied the Covid-19 mandates were either not fined or only a nominal amount.

64.    In March of 2020, less than three years after the new Basilico's location opened for business, the government attempted to shut it down, and nearly every other small business in the state of California, alleging that Covid-19 provided the

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

government with unfettered power to shut down any business it chose to in the name of "protecting the health of its citizens."

65.    Generally, under the principles of federalism, the federal government is not empowered to act directly against the rights of its citizens because of protections existing in the Constitution, Bill of Rights and restrictions against state governments from acting in a similar manner. One unhealthier trend is that lesser governmental units, agencies, committees, boards and similarly situated entities proceed against citizens who are attempting to exercise their right to free speech.  These pockets of bureaucratic power use the essentially unlimited resources of the 'wholeof government' apparatus to enforce compliance with the personal views of those who control the decentralized levers of power.

66.    The chilling effect and financial disaster which results from the intrusion of the foregoing institutions into the lives of ordinary (e.g., non-political, or not financially "connected" individuals) is incalculable, but widespread.

67.    The instant case represented the embodiment of unlawful government overreach.  Plaintiff Roman, a small business owner and operator with a sterling reputation as an excellent, vintage east coast style Italian restaurant known for bringing the Huntington Beach community together, publicly announced his intention to keep his restaurant up and running and open to the public—and then remained true to his word.  It is the lawful exercise of the Plaintiffs' protected rights which triggered the illegal conduct of the Defendants targeting them.

**F.    *FINES WERE ARBITRARY AND EXCESSIVE UNDER THE CALIFORNIA LABOR CODE.***

68.    Assuming *arguendo* the fines were timely imposed by Cal-OSHA—which Plaintiffs do *not* concede,  California Labor Code § 6319(c), explains that regulations shall be promulgated covering the assessment of civil penalties, and the appropriateness of the civil penalties must take into consideration: 1) the size of the

---

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

business; 2 ) the gravity of the violation; 3) the good faith of the employer; and 4) whether or not the employer has a history of violations. Independent of the untimeliness of the penalty assessment, every statutory factor to be considered militates against the authorization of *any* award amount. Indeed, Plaintiff Basilico's is a small family-owned employer, with one location, and no prior history of violations, and there was no injury or illness to any employee of the employer who was acting in good faith to protect his employees from the oppressive government behavior which deemed them as "non-essential" (with no basis whatsoever to support any such characterization).

69.     Considering all of the factors under Labor Code § 6319, Basilico's should never have been fined *assuming arguendo* Cal-OSHA even had the authority to levy fines against businesses based on the so-called Covid-19 restrictions (which Plaintiffs do not concede were lawful). This is another factor Plaintiffs allege is proof the excessive (and untimely) penalties levied against it by Cal-OSHA were not the product of bureaucratic oversight, but instead were the intended result of the Defendants' overall plan and design to punish the Plaintiffs for the lawful exercise of their constitutionally protected civil rights. The admissions by the Cal-OSHA cited above establishes the plausibility of this allegation.

70.     While state agencies are entitled to some deference, in this case there was an utter failure to *even consider* the statutory criteria before imposing the fine (independent of it being untimely and unlawful on those bases as well).

71.     In addition to the foregoing, the fine of $185,979.84 amounted to well over twice the amount in Basilico's bank account at the time of the levy and was so disproportionately excessive in relation to Basilico's size that it could have completely wiped Basilico's out of business but for Roman's ability to obtain help from outside sources.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

72.    "Like the Eighth Amendment's proscriptions of 'cruel and unusual punishment' and '[e]xcessive bail,' the protection against excessive fines guards against abuses of government's punitive or criminal-law-enforcement authority. This safeguard, we hold, is 'fundamental to our scheme of ordered liberty,' with 'dee[p] root[s] in [our] history and tradition.' The Excessive Fines Clause is therefore incorporated by the Due Process Clause of the Fourteenth Amendment." (*Timbs v. Indiana*, (2019), 139 S.Ct. at pp. 686–687, italics added.)

73.    Here under the precedent set in *Thomas v. County of Humboldt*, (9th Cir, 2024), 124 F. 4th 1179, (hereinafter "*Thomas*") "Section 1983 does not contain its own statute of limitations." *Flynt v. Shimazu,* 940 F.3d 457, 461 (9th Cir. 2019) (quoting *Butler v. Nat'l Comm. Renaissance of Cal*., 766 F.3d 1191, 1198 (9th Cir. 2014)). "Instead, claims brought under § 1983 are subject to the forum state's statute of limitations for personal injury suits." Id. (citation omitted). In California, "the relevant period is two years." Id. (citing Cal. Civ. Proc. Code § 335.1). "Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (internal quotation marks and citation omitted).

74.    Particularly instructive for the instate case, as stated by the Ninth Circuit in *Thomas* in connection with discussing Olson's original notices of violations or "NOVS" for which she was ultimately fined "…even assuming that Olson should have known of her injury when she received the initial NOVs, **the County continued to impose penalties associated with those NOVs during the limitations period. "When the continued enforcement of a statute inflicts a continuing or repeated harm, a new claim arises (and a new limitation period commences) with each new injury." *Flynt v. Shimazu (9th Cir, 2019)*, 940 F.3d at 462. In the excessive fines context, each imposition of a challenged fine is a new, distinct injury** (emphasis added)." *See* U.S. Const. amend. VIII (prohibiting "excessive fines

imposed" (emphasis added)); cf. Nat'l R.R. *Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."). Because Olson alleges that the County imposed penalties on her well into the limitations period, and each imposition was a new unlawful act, Olson's as-applied challenge is not time-barred. (*Thomas v. Cnty. of Humboldt* (9th Cir. 2024) 124 F.4th 1179, 1192.)

75.    Thus, based on the precedent set in Thomas, Plaintiffs Eighth Amendment claims fall squarely within the two-year limitations period described above, given the October 24, 2024 fine levied against Basilico's bank account.

76.     In August of 2025, the majority opinion in the Supreme Court of the State of New York, Appellate Division, First Judicial Department in the matter of *The People of the State of New York v. Donald Trump* et al, spelled out how to define an excessive fine under the Eighth Amendment, stating that, "…in the 2019 case *Timbs v Indiana* (586 US 146 [2019]) the United States Supreme Court held definitively that the Eighth Amendment's Excessive Fines Clause applied to the States…", and further that, "Both the Federal and State Constitutions prohibit the imposition of excessive fines" (citing *County of Nassau v Canavan*, 1 NY3d 134, 139 [2003]). The Excessive Fines Clause of the Eighth Amendment limits the government's power to "extract payments, whether in cash or in kind, as 'punishment for some offense'" (id., quoting *Austin v United States*, 509 US 602, 609-610 [1993]). A fine is excessive where it is "grossly disproportional to the gravity of a defendant's offense" (id. at 140). Further, when a civil penalty "serves, at least in part, deterrent and retributive purposes, it is thus punitive and subject to the Excessive Fines Clause" (id. at 139-140); (*The People of the State of New York v. Donald Trump et al* (2025) Supreme Court of the State of New York Appellate Division, First Judicial Department, Appeal No'.s 2834-2836, Id. at page 316.)

77.     Here, the initial levy of Basilico's operating account was in the amount of $70,000.00, constituting the entire amount in its account. In addition, Cal-OSHA

claimed another approximately $115,000 was due to it from Basilico's. This amount would easily have put another restaurant–with less community support–completely out of business. Thus, the fine was both "grossly disproportionate" and "punitive" in nature and therefore proscribed by the Excessive Fine prohibitions encompassed in the Eighth Amendment.

78.    It is indisputable that the total fine imposed by Cal-OSHA in the amount of $185,979.84 was grossly excessive in light of the size of Basilico's restaurant; the fact that it had not acted unlawfully, the fact that the amount of the fine was more than twice the amount in Basilico's operating account at the time of the levy; and in light of businesses comparable in size with serious Cal-OSHA violations which caused grievous harm to their employees but were never fined anywhere near as much as Basilico's.

### G.    *NO DUE PROCESS TO CONTEST THE ARBITRARY AND UNTIMELY EXCESSIVE FINES IMPOSED BY CAL-OSHA.*

79.    The California Department of Industrial Relations ("DIR") oversees the California Occupational Safety and Health Administration. Cal-OSHA is a division within the DIR and is responsible for developing and enforcing California's workplace safety and health regulations.

80.    On or about August 21, 2023, Basilico's received a notice from the "Employment Development Department" for the State of California where a "Notice of Levy" was included. The Notice of Levy proclaimed, "make check or money order payable to Employment Development Department…." With an "amount due" of $185,979.84. The Notice of Levy was issued allegedly based on, a "Debt owed to the Department of Industrial Relations."

81.    But Basilico's did not receive formal, written notice as required under the law, prior to the Notice of Levy that it would be fined, levied or otherwise have its bank accounts seized, had no hearing pertaining to the purported fine, and was not

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

provided with any opportunity prior the imposition of the fine to make an argument that the same was not permissible or justified under the law. Approximately one month after receiving the Notice of Levy, Basilico's bank account was seized, and the entire amount in its account, used to pay its employees, pay its vendors, its rent, purchase fresh food and other supplies to keep it running, etc., was unlawfully seized in an instant.

82. After January of 2021, the visits from Cal-OSHA agents ceased (as far as Basilico's management is aware), there was no written correspondence received by Basilico's and there was no notice of any court hearing or proceeding. Nevertheless, approximately two and a half years after January of 2021, on August 21, 2023, Cal-OSHA, (through the Department of Industrial Relations) issued a Notice of Levy in the amount of $185,979.84 against Basilico's, and without notice seized Basilico's bank account, taking approximately $70,000.00 out of Basilico's operating account- (amounting to the entirety of the amount in the account at the time). This was the account through which Basilico's paid its employees' wages and taxes.

83. Thereafter, and up through October 21 of 2024, Cal-OSHA continued to seize the funds deposited into Basilico's operating account on an ongoing basis, and as of October 21, 2024, when it once again seized the funds in Basilico's operating account, it had taken approximately $80,000.00 of Basilico's hard-earned funds without any notice, hearing, or written correspondence of any kind. Cal-OSHA further claimed that Basilico's somehow owed it an additional approximate $105,000.00 given that Basilico's did not have the entire $185,979.84 in its account at the time that its bank account was initially levied. When Roman called the Department of Industrial Relations which collects funds on behalf of Cal-OSHA, and inquired about the levy, arguing that he was never served with any judgment or notice to appear to contest, the administrator responded that, "We don't need to. We rubber stamp these."

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

84.    § 1 of the Fourteenth Amendment states as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

85.    The Fourteenth Amendment prohibits states from depriving any person of life, liberty, or property without due process of law. The Supreme Court has held that this protection extends to all natural persons (i.e., human beings), regardless of race, color, or citizenship. The Court has also considered multiple cases about whether the word person includes artificial persons, meaning entities such as corporations or companies like Basilico's.

86.    Here, Cal-OSHA, a division of the DIR, has unlawfully abridged Basilico's rights by seizing its bank account without justification or due process, purportedly acting under color of law in accordance with Governor Newsom's Covid-19 edicts, as enforced by Parker, Lee and Killip, in a manner violating the Fifth and Fourteenth Amendments to the United States Constitution. This unconstitutional deprivation of Basilico's rights was in the form of fine issued in a grossly excessive and disproportionate manner and by levying its Bank Account without due process of law. Courts do recognize a business can have constitutionally protected rights— including the right to due process.

### H.    *CAL-OSHA'S UNLAWFUL PURPOSE FOR PENALIZING BASILICO'S.*

87.    The Cal-OSHA agent who had attempted to serve the alleged warrant on Basilico's in January of 2021, admitted to Roman that he had *never* served a warrant

before, and that Basilico's had been targeted because of Roman's outspoken comments about defying Gavin Newsom's lockdown orders and criticizing the same.

88.    At all relevant times herein, Basilico's ran a safe, clean and hazard-free workplace. Basilico's had zero confirmed cases of Covid-19, an open workspace with plenty of room, and zero employee complaints. Basilico's had a total of approximately 12 employees.

89.    According to Cal-OSHA records available since 2015, Basilico's ranks near the top in terms of fines compared to all other businesses for all categories of alleged violations, before and since Covid-19. As for just Covid-19, on information and belief, no other small business has been fined as much as Basilico's, and in comparison to all businesses, small and large, Basilico's again ranks near the top.

90.    On information and belief, no other restaurant that defied Cal-OSHA's Covid-19 requirements was fined even 15% of the amount of the fine imposed on Basilico's.

91.    By contrast, Foster Farms, a meat processing facility, was fined approximately $170,000.00 after having *400 confirmed cases of Covid-19 and nine Covid-19 related deaths*, and a facility that was deemed so unsafe that it was shut down. In comparison, Foster Farms is a major poultry company with a large, industrial footprint. It's a family-owned business, now acquired by private equity firm Atlas Holdings, which generates approximately $3 billion in annual sales. The company has multiple processing facilities and a significant workforce, with approximately 10,000 employees. This circumstance alone warrants denial of the Defendants' anticipated motion to dismiss so that discovery can commence.

92.    On information and belief, Cal-OSHA at all relevant times herein was headed by Douglas Parker, Jeffrey Killip and Debra Lee, who reported directly to Gavin Newsom.  On further information and belief, Parker was later recruited by Joe Biden to run the Federal OSHA organization and both Newsom and Parker conspired to retaliate against and financially punish Roman and Basilico's in an attempt to shut

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

down Basilico's operations expressly because of Roman's outspoken defiance of Newsom's government shut down orders.

93.    By way of this Action, Roman and Basilico's seek declaratory relief, injunctive relief against Parker, Killip and Lee acting in their official capacities as Chief Deputy's of Cal-OSHA for their unlawful levying of Basilico's bank accounts, false accusation against Roman and Basilico's in retaliation for Roman's public announcement that he would keep Basilico's open during Covid-19, and that he would resist and defy any attempt by the government to shut it down, and for monetary damages as set forth in detail below.[7] Cal OSHA improperly targeted Roman (based on his speeches critical of California's authoritarian stance with respect to shutting down small businesses and attempting to force restaurant patrons to wear masks pursuant to the unlawful ETS regime), far exceeding its regulatory authority, on information and belief, as directed by Gavin Newsom.

## CAUSES OF ACTION
### COUNT I
### (Constitutional Causes of Action)
### 42 U.S.C.§ 1983
### Violation of the U.S. Constitution- First Amendment-Abuse of Investigative Power and Chilling Effect.

94.    Plaintiffs reincorporate the foregoing as if fully written herein.

95.    California and federal statutory and constitutional law specifically limit the authority of Cal-OSHA and its members to investigations related to professional conduct, not political speech. Political speech may not be investigated by the Defendants.

96.    As a private citizen, Roman has made numerous public statements regarding Covid-19 and the government's response thereto which are considered political in

---

[7] See *Ex Parte Young*, 209 U.S. 123 (1908).

nature by the government. He has specifically denounced the need for masks, and he has publicly stated his intention is to defy California's forced business closures and all lockdown mandates.  His statements have been made on numerous new outlets, radio shows, in print, and on podcasts.[8]

97.    Roman further engaged in protected speech on various "news" outlets between the dates of June of 2020, through the Summer of 2022, speaking out about refusing to allow masks in his restaurant; decrying California's governmental overreach in attempting to shut businesses down; and even renting a giant billboard in September of 2020 stating, "Leave the Mask, Take the Cannoli" as a means of letting California's government know that he did not respect the government's usurpation of authority to require restaurant patrons to wear masks.  In November of 2020, when Governor Newsom ordered a curfew for businesses just before Thanksgiving, Roman publicly extended his restaurant's operating hours later than it had ever been open in history. Then, when Governor Newsom began announcing vaccine mandates in October of 2021, the first of their kind in the nation, Roman responded by installing a 28-foot wall-scape on the boardwalk of Venice Beach, CA which read, "Leave the Vax, Take the Cannoli."

98.    The legitimacy of the California government's responses to Covid-19, the unlawful government overreach initiated by Governor Newsom, the untested efficacy of approved FDA drugs, the dubious efficacy of vaccines and masks and the propriety of recommending them or mandating them for use in the healthy U.S. population (and the other related matters) were subjects on which Roman has opined. These are all broad issues of social and political interest to the public at large.

99.    Defendants, and each of them, initiated their plan to shut down Roman and make an example of him in order to dissuade other small business owners from taking

---

[8] *See* TheConstitutionalBattleground.com.

a similar stand; however, their decision to harass him with a barrage of agents from various government entities was retaliation based on Roman's political speech, using Covid-19 safety standards as a pretext to levy Basilico's operating account funds and leave it without funds to pay its employees in an attempt to force it out of business.

100.    The content of Roman's speech was a substantial motivating factor for Defendants' investigations. Defendants had no authority to initiate an investigation into Roman and/or Basilico's based on public speeches Roman gave criticizing Gavin Newsom and vowing to defy the government's attempt at an unconstitutional power grab.

101.    Defendants abused their investigative power solely to chill Roman's political speech because Defendants were not required to investigate frivolous complaints made by individuals other than Basilico's employees. And, based on information and belief and to be confirmed by discovery, Cal-OSHA never received any such legitimate complaints. Moreover, the matters that Cal-OSHA contended were under investigation exceeded the Defendants' jurisdiction and were illegal. Defendants have produced no evidence that any of Basilico's employees was harmed or that there is any concern by any patron related to Covid-19.

102.    Under Cal-OSHA's ETS, Defendants were *not* required to "investigate" Roman or Basilico's for any reason. They chose to do so because of Roman's outspoken criticism of forced government shutdowns. In fact, the "investigational powers" that Cal-OSHA has been provided with are generally limited under California Labor Code § 6315 pertaining to "accident investigations" as opposed to intruding into small, family-owned businesses that have no "accident" or other serious issue reported to Cal-OSHA.

103.    Defendants' actions would chill a person of ordinary firmness from petitioning or continuing to speak out publicly against the governor's actions and against government shutdowns.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

104.   Defendants have neither a substantial nor a compelling interest to justify investigating Roman and/or Basilico's for making statements about California's government's actions or criticizing decisions by its Governor.

105.   Defendants' actions are not narrowly tailored to any claimed government interest in regulating the restaurant business because political speech or thoughts and discussions surrounding the restaurant industry are not within the Defendants' jurisdiction.

106.   Defendants' actions were retaliatory in nature and initiated to chill both Roman's speech *as well as* the owners and operators of all other similarly situated small businesses. The actions were also to punish Roman for speaking out by financially ruining Basilico's with an excessive and grossly disproportionate fine.

107.   Defendants' investigation subjected Roman and Basilico's to the present harm of expending time and money to respond to the improper investigations as well as the potential future harm of disciplinary or corrective action, including but not limited to the levying of Basilico's bank account.

108.   Roman and Basilico's respectfully request that this Court declare that Defendants have violated Roman's constitutional rights, and to award him actual, nominal, general and compensatory damages for damage to his personal dignity, reputation, medically derived income, and constitutional rights. Roman and Basilico's further seek punitive damages because Defendants' actions were willful or with reckless indifference to Roman's constitutional rights.

**CAUSE OF ACTION**
**COUNT II**
**(Unconstitutional Conditions)**
**Against All Defendants**
**42 U.S.C. 1983, 1988;**
**28 U.S.C. 2201 et seq**

109.   Plaintiffs incorporate the preceding paragraphs by reference.

110. Because expression on "public issues has always rested on the highest rung of the hierarchy of First Amendment Values…mandating that [individuals] affirmatively espouse the government's position on a contested public issue where the differences are both real and substantive" runs afoul of the unconstitutional conditions doctrine. *All for open Society Int'l v. United States Agency for Int'l Dev.*, 651 F. 3d 218, 236 (2nd Cir. 2011).

111. This is especially true when, as here, the government "compels [individuals] to voice the government's viewpoint and to do so as if it were their own." Id. at 237. Here, the government attempted to forcibly shut down and impair Basilico's operations- including, but not limited to, stifling speech through baseless masking and distancing requirements.

112. Neither Roman nor Basilico's should be forced to repeatedly respond to illegitimate "investigations" of Basilico's restaurant based upon Roman's exercise of rights afforded under the U.S. Constitution.

113. Roman must not be forced to abandon his beliefs or rights in order to keep his restaurant business operating as it had for decades.

114. Defendants' repeated illegal investigations of Basilico's and Roman create unconstitutional conditions for the retention of Roman's ability to work in the profession of his choice because they attempted—on numerous occasions—to force him to bend the knee and remain silent on issues of public concern. If he failed to self-censor then he would face adverse actions such as the unlawful revocation of Roman's ability to continue to operate his business.

115. Roman procured a Business License to operate Basilico's from the City of Huntington Beach on June of 1999, he also procured a license to sell alcohol at Basilico's which he received in March of 2020. As set forth above, shortly after Roman began publicly speaking out against the government mandated lockdowns, Governor Newsom's position on Covid-19, and forced masking, his license to sell

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

alcohol was revoked without cause to do so.  Then, in August of 2023, Basilico's Bank Account was unlawfully levied in an attempt by Cal-OSHA to prevent Basilico's from being able to operate by illegally taking its operating capital.

116.    Thus, Defendants' actions violated the unconstitutional conditions doctrine.

117.    Absent injunctive and declaratory relief against the Defendants' application of their investigatory power against Roman and Basilico's because of his political speech, Roman and Basilico's have been, and will continue, to be irreparably harmed.

118.    Plaintiffs respectfully request that this Court enjoin current Deputy Chief of Field Enforcement for Cal-OSHA Debra Lee from further investigating Roman and/or Basilico's on the basis of his exercise of his right to free speech, and from moving forward with its plans to continue to levy funds out of Basilico's operating account in connection with Roman's free speech involving matters of public concern.

119.    Plaintiffs further respectfully request that this Court award to Plaintiffs nominal, actual, compensatory, general and punitive damages for Defendants' Newsom's, Lee's, Parker's and Killip's intentional and unlawful investigations into his political speech while acting under color of law in their individual capacities.

120.    Plaintiffs further respectfully request that this Court award to Plaintiffs the reasonable value of attorney fees under 42 U.S.C. § 1983, and all taxable costs and disbursements, after appropriate motions or applications for the same.

**CAUSE OF ACTION**
**COUNT III**
**(Declaratory Relief)**
**Against All Defendants**

121.    Plaintiff incorporates the preceding paragraphs by reference.

122.    California Code of Civil Procedure ("CCP") § 1060 authorizes this giving Court to render a declaratory judgment in cases of actual controversy relating to the legal rights and duties of the respective parties.

---

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

123. Government Code § 11350(a) authorizes this Court to render declaratory judgment as to the validity of the Emergency Temporary Standard ("ETS") based on its substantial failure to comply with the APA, or upon the ground that the facts recited in the finding of an emergency…do not constitute an emergency under Government Code § 11346.1.

124. Defendants Newsom, Parker, Killip and Lee, all while acting in their official capacities for Cal-OSHA oversight, have promulgated and are enforcing standards in a manner that interferes with Plaintiffs' rights and violates California statutory law and the California and U.S. Constitutions.

125. An actual and substantial controversy exists between Plaintiffs and Defendants as to the parties' respective rights and responsibilities. A judicial determination of the parties' rights and the constitutionality of the ETS, as applied to Plaintiffs, will provide relief from the uncertainty and insecurity giving rise to this controversy.

126. Plaintiffs hereby seek a declaration as to whether Newsom's ETS was promulgated in violation of the APA, and therefore it exceeds the Defendants' statutory authority; violates the California Constitution; and/or violates the U.S. Constitution. Accordingly, these actions were *ultra vires* under the "major questions" doctrine.

127. Plaintiffs hereby further seek a declaration as to whether Defendant Cal-OSHA's levies upon Basilico's operating accounts, as directed by Newsom, Parker, Lee and Killip, exceeds Defendants' statutory authority, violates the California Constitution, and/ or violates the U.S. Constitution.

## CAUSE OF ACTION
### COUNT IV.
**(Constitutional Causes of Action)**
**Violations of Substantive Due Process**
**Against All Defendants**

128. Plaintiffs incorporate the preceding paragraphs by reference.

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

129.   The Fifth Amendment prohibits the federal government from depriving a person of life, liberty, *or property* without due process of law. This constitutional principle further prevents an unlawful state action from depriving a citizen of their property interest without due process of law.  U.S. Const., Amend. 14.

130.   Roman owns and operates Basilico's restaurant and has been charged with the responsibility of overseeing its bank accounts since March of 2020.  The income generated by Basilico's restaurant is utilized to pay its employees' wages and other benefits, as well as to pay Basilico's ownership.   Between August of 2023, and October of 2024, Cal-OSHA unlawfully seized and levied Basilico's bank accounts, removing in excess of $80,000.00 of its property, and claiming an additional $105,000.00 was still due and owing.

131.   On information and belief, Cal-OSHA intends to continue its levies of Basilico's bank accounts until such time as the entire amount of the unwaful fines have been paid.

132.   Roman did not receive proper, formal notice from Cal-OSHA of the facts upon which this assessment was based, or why the amount of $185,000.00 would be due. Instead, Cal-OSHA simply levied the funds directly out of Basilico's account in August of 2023 without legally required written notice, without hearing, and without any opportunity for opposition to the same.

133.   Upon information and belief, Defendants have not initiated any investigations into any other family-owned restaurants in the Huntington Beach or Orange County and Los Angeles County areas pertaining to alleged Covid-19 Health Order Violations besides Basilico's.

134.   The Plaintiff had engaged in protected speech when he spoke in public forums, such as (i) a highly publicized interview with Andrew Cuomo; (ii) online social media platforms; (iii) the LA Times; and (iv) at various times at Basilico's restaurant location when he gave various speeches dealing with matters of public concern but

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

primarily focused on government overreach during the Covid-19 pandemic. At various times Plaintiff's constitutionally protected speech has vigorously criticized the Defendants for their wrong—and ultra vires—conduct attempting to completely shut down family-owned businesses representing the backbone of the American economy, and the forced self-imprisonment of American citizens. The Defendants' conduct lacked factual basis and in violation of their mandate to make protection of the public's health a priority, rather than wrongfully subordinated to the proprietary interests of large corporations.

135.   Based on the foregoing, Cal-OSHA never had lawful power permitting it shut down, or threaten to shut down, Basilico's restaurant. Similarly, it had no lawful power or authority to freeze, levy or otherwise encumber Basilico's bank accounts. This is especially true considering that Basilico's never received any formal, written notice of hearing, notice of levy, or notice of how to oppose such a levy prior to August 21, 2023 and therefore never had any opportunity to be heard on the subject of such levies.

136.   In addition, under 6317, Cal-OSHA is not permitted to impose any civil fine more than six months after the occurrence for which the fine was issued.  Here, Roman was never provided with any formal, written notice of any investigation, warrant, or complaint pertaining to Basilico's in the six months leading up to the levy on Basilico's account in August 2023, and continuing through October of 2024.

137.    Nevertheless, bureaucrats in Cal-OSHA, including but not limited to Newsom, Lee, Killip and Parker, decided that they should be in charge of running a small, family-owned Italian restaurant without any statutory basis for such an arrogation of governmental authority. Roman has publicly exposed the Defendants' dereliction of its statutory mission and legislative purpose, to wrongfully engage in the practice of shutting down dissident and/or critical small businesses and forcing the self-imprisonment of American citizens. In response, Cal-OSHA has targeted and pursued

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

Roman and Basilico's, ultimately culminating in the levying of its operating account, and creating an existential threat for the continuation of Basilico's business.

**CAUSE OF ACTION**
**(Count V)**
**Constitutional Causes of Action**
**VIOLATIONS OF THE EIGHTH AMENDMENT-EXCESSIVE FINES**
**Against all Defendants**

138.   Plaintiffs incorporate each of the preceding paragraphs by reference as if fully and completely set forth herein.

139.   Plaintiff, Basilico's was fined in excess of $185,000.00, and wholly  based on Covid-related violations of the unlawful Cal-OSHA imposed mandates enacted pursuant to the ETS.

*140.*   On information and belief, and based on the information made available by Cal-OSHA online, Plaintiffs were fined tens of thousands of dollars more than any other single location restaurant that defied Cal-OSHA and Governor Newsom's Covid-19 mandates. On further information and belief, this disparity was triggered by Roman's outspoken defiance and criticism of Newsom, Cal-OSHA and California's government in general which has now been vindicated as substantively correct based on the U.S. Supreme Court's ruling in *National Federation.*

141.   By way of example only, according to Cal-OSHA and the DIR, Cal/OSHA "cited Foster Farms $103,100, for five serious, one repeat regulatory, and two regulatory violations at its Livingston plant; and $78,400 for three serious, one repeat regulatory, and two regulatory violations at the distribution center. Regulatory violations were issued in both Foster Farms inspections and to Human Bees, Inc. for

their failure to timely report work-related fatalities. Additionally, Cal/OSHA issued serious violations related to their Injury and Illness Prevention Programs many of which stemmed from failing to properly communicate, assess, correct, and train on COVID-19 workplace hazards. The third serious violation at the plant was cited for a blocked eyewash station.[9]" On information and belief, Foster farms had hundreds of Covid-19 illnesses and at least 9 Covid- related deaths while Basilico's had none of either, and yet Basilico's was somehow fined more.

142.    Defendants, and each of them, acted under color of law in implementing the excessive fines described herein against Plaintiffs, each of which was payable to the DIR, a department of California's government, and in doing so, attempting to punish Roman for exercising his right to free speech in criticizing Newsome, Cal-OSHA and California's government.

143.    The Defendants' conduct caused a deprivation of a right secured by the Constitution—in this context, the Eighth Amendment right to be free from "excessive fines," as incorporated against the states through the Fourteenth Amendment (per *Timbs v. Indiana*).

144.    This action was timely brought in September of 2025, less than two years following the last levy of Basilico's Bank Account on October 21, 2024, thereby

---

[9] https://www.dir.ca.gov/DIRNews/2021/2021-54.html

making it timely under the applicable statute of limitations under the precedent set in *Thomas*.

145.   The amount and/or structure of the fine imposed by Cal-OSHA is grossly disproportional to the gravity of Plaintiffs' alleged conduct at issue.

146.   As a result of the foregoing, Plaintiffs have suffered a deprivation of their Eighth Amendment right to be free from excessive fines, entitling them to damages and/or equitable relief under § 1983.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Tony Roman and Basilico's respectfully request that this Court enter judgment against Defendants and provide him with the following relief:

A)      A declaratory judgment that the Defendants' Killip, Parker, Newsom and Lee's actions (in their official capacities) were *ultra vires* under the "major questions doctrine" and violated Plaintiff's rights under the First Eighth, and Fourteenth Amendments to the United States Constitution, Article 1, § 2, of the California Constitution, and the unconstitutional conditions doctrine under the *Ex Parte Young,* 209 U.S. 123 (1908) decision.

B)      An award of prospective injunctive relief prohibiting Debra Lee, as the Chief of Cal-OSHA in her official capacity, from conducting any future investigations into Plaintiff's protected First Amendment Speech under *Ex Parte Young*, 209 U.S. 123 (1908)

C)      An award of prospective injunctive relief prohibiting Debra Lee, as the current Deputy Chief of Cal-OSHA, in her official capacity from further levying Basilico's bank accounts on the basis these actions were initiated by the Defendants

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

in violation of Roman's First Amendment Right to Free Speech and in violation of Roman and Basilico's 14th Amendment Right to Due Process.

D) An Award of actual, general, and compensatory damages in an amount to be proven at trial, including any damages or penalties available at law against Gavin Newsom in his personal capacity, Douglas Parker, in his personal capacity, Debra Lee, in her personal capacity and Jeffrey Killip in his personal capacity for acting under color of law in issuing excessive and unconstitutional fines against Basilico's

E) Reasonable attorneys' fees, costs and disbursements in this action pursuant to 42 U.S.C. § 1988 and upon proper post-judgment application for the same.

F) Any further relief that this Court may find just and proper.

G) A trial by jury of all such matters properly tried as such is requested.

**Law Offices of Heather Gibson, P.C.**

Dated:  March 16, 2026            By:    /s/   Heather E. Gibson
                                   Heather E. Gibson, Esq.,
                                   Attorney for PLAINTIFFS

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES