JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TONY ROMAN et al.,

               Plaintiffs,

      v.

GAVIN NEWSOM et al.,

               Defendants.

Case No. 2:25-cv-08531-HDV-E

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [46]**

**I.      INTRODUCTION**

In February 2026, the Court dismissed the First Amended Complaint ("FAC") filed by Plaintiffs Tony Roman and Basilico's Pasta e Vino ("Basilico's"). *See* Order Granting Defendants' Motion to Dismiss ("Order") [Dkt. 31]. In a detailed Order cataloguing the jurisdictional and legal infirmities that plagued their FAC, the Court held that state sovereign immunity shielded Governor Gavin Newsom and the California Division of Occupational Safety and Health ("Cal/OSHA") from Plaintiffs' suit, and that the governing two-year statute of limitations independently barred Plaintiffs' federal civil rights claims. *Id.* at 9, 18. Despite these structural deficiencies, the Court granted Plaintiffs leave to amend. *Id.* at 22 n.10. It cautioned, however, that it harbored "grave concerns" about Plaintiffs' ability to cure these defects. *Id.*

The Court's concerns were well-founded. Plaintiffs filed a Second Amended Complaint ("SAC") that largely repleads the same facts and legal theories as their FAC, without offering any viable basis for overcoming either the jurisdictional bar erected by the Eleventh Amendment or the time-bar imposed by the statute of limitations. *See generally* [Dkt. 32]. Rather than meaningfully address these deficiencies, Plaintiffs amended their complaint to add new Cal/OSHA officials as defendants and recast Governor Newsom as a defendant in his official and individual capacities, and rehashed the same continuing-violations theory that the Court had already considered and rejected. *See id.* ¶¶ 11–15, 74–75; Order at 16–17. But pleading official-capacity claims without alleging facts that plausibly satisfy a recognized exception to the Eleventh Amendment does not overcome its jurisdictional bar; adding new defendants to a time-barred lawsuit does not reset the clock; and reprising the same continuing-violations theory without pleading new facts to support it does not compel a different result.

The Court gave Plaintiffs a detailed roadmap identifying the jurisdictional and legal obstacles in their path. Plaintiffs trod the very same ground—and stepped on the same rake twice. After three failed opportunities to plead a viable claim, the Court is not persuaded that offering Plaintiffs a fourth would be fruitful. Because their claims remain jurisdictionally and legally infirm, the Court dismisses Plaintiffs' SAC with prejudice.

## II.    BACKGROUND

Following the global outbreak of the COVID-19 virus, Governor Newsom declared a state of emergency in California and issued a statewide order in March 2020 directing Californians to shelter in place and heed public health directives.  Cal. Proclamation of State of Emergency (Mar. 4, 2020), *withdrawn by* Cal. Proclamation Terminating State of Emergency (Feb. 28, 2023); Cal. Exec. Order No. N-33-20 (Mar. 19, 2020), *rescinded by* Cal. Exec. Order N-07-21 (June 11, 2021); *see* SAC ¶¶ 22, 24.  That November, as workplaces across California began resuming in-person operations, California's Occupational Safety and Health Standards Board promulgated and adopted emergency temporary standards ("ETS") to curb the transmission of the virus in the workplace.  *See* Occupational Safety & Health Standards Bd., Notice of Proposed Emergency Action: COVID-19 Preventing (Nov. 2020) [hereinafter Notice of Proposed Emergency Action], https://perma.cc/7V8Q-UDJN (codified at Cal. Code Regs. tit. 8, §§ 4205–5205.4 (2020)); SAC ¶ 28.[1]  The ETS required California employers to implement and maintain a written COVID-19 prevention program, ensure that employees wore face coverings in the workplace, and enforce physical distancing protocols.  *See* Cal. Code Regs. tit. 8, § 3205(c); *see* SAC ¶ 28.  Cal/OSHA, a division of the California Department of Industrial Relations ("DIR"), was responsible for enforcing these ETS.  Cal. Labor Code §§ 142 (2002), 6307 (1973).  It was authorized to issue citations and civil penalties to employers who violated the ETS.  *See id.* §§ 6317 (2019), 6427 (2017), 6428 (2000), 6429 (2017).

### A.    Factual Background[2]

Basilico's is a restaurant in Huntington Beach that is owned by Roman and was subject to the ETS.  SAC ¶¶ 8–9; *see* Cal. Code Regs. tit. 8, § 3205(a)(1).  In response to Governor Newsom's stay-at-home order in March 2020, Roman decided that Basilico's "would never shut down at the government's direction."  SAC ¶ 41.  He proclaimed Basilico's the "[c]onstitutional [b]attleground" for the fight against California's "tyranny" and "unlawful and obsessive attempts to force shutdowns."  *Id.* ¶¶ 40–41.  "To counter the government's action," he kept Basilico's open "without

---

[1] The ETS expired on February 3, 2025.  Cal. Code Regs. tit. 8, § 3205(a)(1) (2023); SAC ¶ 54.

[2] At the motion-to-dismiss stage, the Court accepts as true all of Plaintiffs' well-pleaded factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

any restrictions" throughout the pandemic  and affirmatively "banned masks from the property." *Id.* ¶ 41; *see id.* ¶ 97.  Roman also took to television, radio, podcasts, social media, and print to broadcast his "open defiance" of California's COVID-19 safety measures. *Id.* ¶¶ 42–44; *see id.* ¶ 96 (citing Plaintiffs' website, "TheConstitutionalBattleground.com").

During Roman's campaign against California's COVID-19 safety measures, Cal/OSHA received complaints that Basilico's had violated the ETS. *Id.* ¶¶ 56, 58.  Cal/OSHA inspectors visited Basilico's on various occasions between late 2020 and early 2021 to ascertain its ETS compliance. *Id.* ¶¶ 46, 50–52, 54, 56, 58.  On each occasion, Plaintiffs refused to allow Cal/OSHA to inspect the premises. *Id.* ¶¶ 46, 51. *But cf.* Cal. Labor Code § 6314(a) (1993) (granting Cal/OSHA inspectors "free access to any place of employment to investigate and inspect during regular working hours").  When Cal/OSHA inspectors returned in January 2021 with a warrant and police escort, Plaintiffs again refused their entry. *Id.* ¶¶ 51, 56.

On June 17, 2021, Cal/OSHA cited Basilico's for six violations of the ETS, including general, serious, and willful violations.  Defendants' Request for Judicial Notice ("RJN") Ex. A, at 13–30 [Dkt. 19].[3]  Cal/OSHA charged Basilico's with failing to establish a written COVID-19 prevention program, failing to provide COVID-19 safety training to its employees, failing to implement prophylactic measures to prevent the workplace transmission of the virus, and failing to ensure that employees wore face coverings in the workplace. *Id.* at 18–28.  For these violations, Cal/OSHA imposed on Basilico's $152,060 in civil penalties.[4] *Id.* at 29.

---

[3] Defendants renew the RJN that accompanied their motion to dismiss Plaintiffs' FAC.  Defendants' Motion to Dismiss SAC ("Motion") at 13 n.2 [Dkt. 46].  In support, Defendants represent, and Plaintiffs do not dispute, that the parties have agreed the Court may consider the materials it previously judicially noticed and deemed incorporated by reference into the FAC in resolving Defendants' instant Motion. *Id.*  For the reasons provided and to the same extent set out in its prior Order, the Court grants Defendants' unopposed RJN. *See* Order at 18–21.

[4] Plaintiffs' allegations remain internally inconsistent regarding the sum of the civil penalties that Cal/OSHA imposed. *See* Order at 4 n.4 (noting the same inconsistency in the FAC).  They allege that the penalties total "$185,979.84" and "$185,000.00," SAC ¶¶ 71, 132, but neither figure accurately reflects the actual sum of the penalties that Cal/OSHA imposed.  As noted, Cal/OSHA fined Basilico's $152,060.  RJN Ex. A, at 29.  And as the Court has previously explained, Plaintiffs' elevated figures appear to account for statutory interest and fees that accrued on the principal penalty sum after Basilico's failed to timely pay the penalties.  Order at 4 n.4; *see* RJN Ex. A, at 11.

4

That same day, Cal/OSHA sent Plaintiffs notice of the citations and penalties by certified mail, both to Basilico's business address at "21501 Brookkhurst [sic] Street" in Huntington Beach and to Roman personally at "3857 Birch Street" in Newport Beach.  *Id.* at 31–32.  The notices informed Plaintiffs that Basilico's had fifteen days to administratively appeal the citations and penalties or to request an informal conference with Cal/OSHA to contest them.  *Id.* at 13–14, 16.  The notices also cautioned that if Basilico's failed to timely act within the prescribed window, the citations and penalties would become final and unreviewable.  *Id.* at 14; *see* Cal. Labor Code § 6601 (1974); Cal. Code Regs. tit. 8, § 333(a) (2016).

On July 8, 2021, fewer than three weeks after Cal/OSHA cited and fined Basilico's, Plaintiffs posted a YouTube video with the following caption: "We just discovered that on June 17, 2021, [Cal/]OSHA proposed massive fines."  RJN Ex. B, at 35 (emphasis omitted); *see* Basilico's Pasta e Vino Entertainment, *New Development: OSHA Trying to Extort Tony Roman & 'Basilico's Pasta e Vino'?* (YouTube, July 8, 2021), https://perma.cc/A3Y5-QMVS [hereinafter *New Development*]. The video displays the date the citations and penalties were issued, the precise amount of the penalties imposed, the identity of the agency that imposed them, and the contact information for the Cal/OSHA officials who issued them.  RJN Ex. B, at 35–36.  The video also conveys Plaintiffs' response to the citations and penalties: "To the American traitors at [Cal/]OSHA, you don't have to wait for a counter offer [sic]. . . .  My offer is this: nothing."  RJN Ex. B, at 37–39; *New Development* at 6:19–6:38 (quoting *The Godfather Part II* (Paramount Pictures 1974)); *see also* Order at 13 ("Plaintiffs acknowledge . . . that Roman made the[] statements" in this video).

By November 27, 2021, Plaintiffs had made additional, more granular public statements regarding Cal/OSHA's citations and penalties.  A webpage on their website, archived and collected on that date, reflects the following statement:

> [Cal/]OSHA has fined us $152,060.00. . . .  They too offered us an opportunity to defend ourselves in hearings, to make changes to our operations[] in order to come into compliance with lockdown related mandates, and to negotiate away the fines.  We have ignored all correspondence, because we will not acknowledge any agency or agents of the "mini-dictators" enforcing these mandates.

RJN Ex. C, at 44; *see Story of Our Fight*, The Constitutional Battleground, https://web.archive.org/

5

web/20211127141118/https://Theconstitutionalbattleground.com/story-of-our-fight [https://perma.cc/2SR4-Q2D2] (archived November 27, 2021).

In May 2023, nearly two years after Cal/OSHA cited and fined Basilico's, the DIR brought a civil action against Basilico's in the Orange County Superior Court to collect the "unpaid civil penalty" of "$152[,]060.00" pursuant to "the final Citation and Notification of Penalty of the Division of Occupational Safety and Health." RJN Ex. A, at 12; *see* Cal. Labor Code § 6650(a) (2001) (authorizing the DIR to initiate a civil action to collect unpaid penalties "[a]fter the expiration of the period during which a penalty may be appealed, no appeal having been filed"). On May 23, 2023, the DIR mailed Basilico's a notice containing a "judgment and letter of payment due," which also listed the case number for the pending state action. RJN Ex. A, at 33 (emphasis omitted). The following day, the state court entered judgment against Basilico's based on the "final Citation and Notification of Penalty of the Division of Occupational Safety and Health." *Id.* Ex. A, at 11; *see* Cal. Labor Code § 6650(c) (requiring the state court clerk to "enter judgment for the state against the person assessed the civil penalty" "immediately upon the filing of a notice of civil penalty by the [DIR]"). The total amount of the judgment was $181,865.49, which was comprised of the $152,060 in civil penalties, $29,270.49 in statutory interest "pursuant to [California] Labor Code [s]ection 6650(c)(d)," and $435 in filing fees "pursuant to [California] Government Code [s]ection 6103.5." *Id.* The state court clerk mailed Basilico's notice of the judgment on June 1, 2023. *Id.* at 10.

In August 2023, Plaintiffs allege that they learned the DIR had issued a notice of levy to collect from Basilico's bank account a "[d]ebt owed to the [DIR]." SAC ¶ 80. The following month, the DIR levied approximately $70,000 in Basilico's bank account to partially satisfy the sum of the penalties imposed. *See id.* ¶ 81. In October 2024, the DIR levied another $80,000 in Basilico's bank account. *Id.* ¶ 83. Plaintiffs now assert that they "did not receive formal, written notice as required under the law" that "it would be fined, levied, or otherwise have its bank accounts seized," and had "no hearing" and "no opportunity" to contest the penalties. *Id.* ¶¶ 81, 132.

## B.    Procedural Background

On September 9, 2025, Plaintiffs filed their original complaint. Complaint [Dkt. 1]. The following month, they filed the FAC against Cal/OSHA and Governor Newsom in his official

6

capacity, advancing claims under 42 U.S.C. section 1983 for violations of the First Amendment, the unconstitutional-conditions doctrine, the Eighth and Fourth Amendments, as well as a state-law claim for declaratory relief. FAC ¶¶ 79–122 [Dkt. 13]; *see id.* ¶¶ 60–63.

On February 24, 2026, the Court dismissed the FAC with leave to amend and dismissed Cal/OSHA from this action with prejudice. Order at 9, 22. The Court held that state sovereign immunity shielded Cal/OSHA and Governor Newsom from Plaintiffs' claims and that the Eleventh Amendment consequently barred the Court from entertaining Plaintiffs' action. *Id.* at 7–11. The Court further held that Plaintiffs' federal civil rights claims were independently barred by the two-year statute of limitations because Plaintiffs knew of their alleged injury—Cal/OSHA's June 2021 imposition of citations and penalties—by November 2021 but waited to file suit until September 2025. *Id.* at 11–18.

On March 16, 2026, Plaintiffs filed the operative SAC. They name the following individuals as defendants in their official and individual capacities: Governor Newsom, former Cal/OSHA chiefs Douglas L. Parker and Jeffrey Killip, and current chief of Cal/OSHA Debra Lee.[5] *Id.* ¶¶ 11–15. Plaintiffs also name Cal/OSHA as a defendant.[6] *Id.* ¶ 10. Against all Defendants in their

---

[5] Plaintiffs repeatedly misidentify Parker and Killip as former "Deputy Chief[s]" of Cal/OSHA and Lee as the current "Deputy Chief" of Cal/OSHA. *E.g.*, SAC ¶¶ 13–15. *But see id.* ¶ 13 (alleging that Parker was "Chief of Cal-OSHA"). Parker served as Cal/OSHA's chief from September 2019 until October 2021. *See* Press Release, Gavin Newsom, Governor, State of California, Governor Newsom Announces Appointments (Aug. 15, 2019), https://perma.cc/YW6S-FEYV (announcing Parker's appointment as "chief of the Division of Occupational Safety and Health"); P.N. 270, 117th Congress (2021) (confirming Parker as an Assistant Secretary of Labor); SAC ¶ 13. Killip succeeded Parker and served as Cal/OSHA's chief from January 2022 until January 2024. SAC ¶ 14; *see* Press Release, California Department of Industrial Relations (Apr. 28, 2022), https://perma.cc/37LG-6SDT (identifying Killip as the "Cal/OSHA Chief"). And Lee succeeded Killip and has served as the incumbent chief of Cal/OSHA since June 2024. Press Release, Gavin Newsom, Governor, State of California, Governor Newsom Announces Appointments (June 6, 2024), https://perma.cc/C6M4-ZAQK [hereinafter Lee Press Release] (announcing Lee's appointment as "Chief of the Division of Occupational Safety and Health").

[6] Plaintiffs do so notwithstanding the fact that the Court dismissed Cal/OSHA from this action with prejudice. *See* Order at 9. Because the Court has already dismissed Cal/OSHA, it strikes from the SAC all allegations identifying Cal/OSHA as a defendant, as well as any claim Plaintiffs still purport to assert against it. *A.H. v. W. Contra Costa Unified Sch. Dist.*, No. 22-cv-03233-AMO, 2024 WL

*(Continued on next page)*

official and individual capacities, Plaintiffs advance the same four section 1983 causes of action as their FAC: (1) violation of the First Amendment (Count 1); (2) violation of the unconstitutional-conditions doctrine (Count 2); (3) violation of the Fourteenth Amendment (Count 4); and (4) violation of the Eighth Amendment's excessive-fines clause (Count 5).  *Id.* ¶¶ 94–120, 12–46. Plaintiffs also assert one state-law claim for declaratory relief against all Defendants in their official capacities (Count 3).  *Id.* ¶¶ 121–27.  For these claims, Plaintiffs seek declaratory and monetary relief, as well as injunctive relief "prohibiting Debra Lee" from "conducting any future investigations into [Roman's] protected First Amendment [s]peech" and from "further levying Basilico's bank accounts."  *Id.* at Prayer for Relief ¶¶ A–D.

On April 24, 2026, Defendants moved to dismiss the SAC under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Motion at 2.  That Motion is fully briefed.  *See* Plaintiffs' Opposition to Motion ("Opposition") [Dkt. 47]; Defendants' Reply in Support of Motion ("Reply") [Dkt. 48].  The Court heard oral argument on June 18, 2026, and took the matter under submission. [Dkt. 49].

## III.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) allows a party to challenge claims in an initial pleading for lack of subject-matter jurisdiction.  That includes challenges based on state sovereign immunity.[7]  *See Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015).

---

1719484, at *1 (N.D. Cal. Apr. 22, 2024) ("Courts routinely strike or dismiss claims or defendants from pleadings where those claims or defendants had already been dismissed with prejudice. . . ."). Even if the Court did not strike those allegations, it would nevertheless dismiss Cal/OSHA again on Eleventh Amendment grounds.  *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–46 (1993) (nonconsenting states and their agencies are "immune from suit in federal court" and the *Ex parte Young* exception "has no application in suits against the States and their agencies").

[7] There is some uncertainty as to whether Rule 12(b)(1) or Rule 12(b)(6) serves as the appropriate vehicle for a party to seek dismissal on state sovereign immunity grounds.  *Compare Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 (9th Cir. 2003) (treating state sovereign immunity as a subject-matter-jurisdiction issue), *with Elwood v. Drescher*, 456 F.3d 943, 949 (9th Cir. 2006) (noting that state sovereign immunity is "an affirmative defense" and stating that "dismissal based on Eleventh Amendment immunity is not a dismissal for lack of subject matter jurisdiction").

*(Continued on next page)*

8

Generally, "'the party asserting subject matter jurisdiction has the burden of proving its existence,' i.e.[,] that immunity does not bar the suit." *Id.* (citation omitted). When presented with a facial challenge to its jurisdiction on sovereign-immunity grounds, a court accepts the well-pleaded factual allegations in the complaint as true. *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014). When confronted with a *factual* challenge, however, "[n]o presumptive truthfulness attaches to [a] plaintiff's allegations." *Pistor*, 791 F.3d at 1111 (quoting *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009)). In resolving a motion to dismiss based on sovereign immunity, a court "is not confined by the facts contained in the four corners of the complaint." *Americopters, LLC v. Fed. Aviation Admin.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006). It may also consider affidavits, declarations, and other evidence relevant to its jurisdiction. *Sommatino v. United States*, 255 F.3d 704, 709 n.3 (9th Cir. 2001). A court may also "resolv[e] factual disputes when necessary." *Pistor*, 791 F.3d at 1111 (citation omitted).

## B. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) allows a party to seek dismissal of all or some claims in a complaint for failure to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be facially plausible, a plaintiff must allege sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Determining whether a complaint states a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must limit its review to the pleadings and construe all well-pleaded factual allegations as true and in the light most favorable to the plaintiff. *Lee v. City of Los Angeles*,

---

Recently, however, the Ninth Circuit has clarified that "[a] sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion." *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017). Whether the Court examines the issue under Rule 12(b)(1) or 12(b)(6) ultimately "makes no difference" because "those standards are essentially the same for purposes of a motion to dismiss based on sovereign immunity." *Parkside Garden LLC v. Cal. Dep't of Soc. Servs.*, No. 15-cv-00043-JGB-KKx, 2015 WL 13546435, at *3 n.4 (C.D. Cal. Oct. 14, 2015), *aff'd sub nom. Parkside Garden, LLC v. Dep't of Soc. Servs. Cal.*, 692 F. App'x 820 (9th Cir. 2017).

9

250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds as recognized by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002).  However, a court is entitled to consider documents incorporated into the complaint and matters outside of the pleadings that are subject to judicial notice.  *Tellabs, Inc. v. Makor Issues & Rts. Ltd.*, 551 U.S. 308, 322 (2007).  To this end, a court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Nor need it blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences.  *Id.*  Under Rule 12(b)(6), dismissal is appropriate when the complaint lacks a cognizable legal theory or fails to plead sufficient facts to support one.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

## IV.   DISCUSSION

Defendants move to dismiss the SAC on five grounds.  *See* Motion at 2.  They argue that the statute of limitations bars Plaintiffs' federal civil rights claims, that the Eleventh Amendment forecloses Plaintiffs' official-capacity claims, that Plaintiffs fail to plausibly state any federal civil rights claim, that qualified immunity shields Defendants from liability for Plaintiffs' federal civil rights claims, and that Plaintiffs fail to adequately allege any Defendant's personal involvement in the conduct they challenge.  *Id.*  The first two of these five grounds disposed of the FAC in its entirety.  *See* Order at 7–18.  For the reasons set out below, they also dispose of every claim in the SAC.  The Court thus grants Defendants' Motion and dismisses Plaintiffs' SAC.[8]

### A.   Statute of Limitations

Plaintiffs assert four section 1983 claims based on Defendants' alleged violations of Plaintiffs' First, Eighth, and Fourteenth Amendment rights.  SAC ¶¶ 94–120, 128–46.  Defendants move to dismiss those claims, arguing that they are barred by the statute of limitations because Plaintiffs did not file their complaint until more than two years after the date their claims accrued.  *See* Motion at 15–17.

---

[8] Because the statute of limitations and Eleventh Amendment dispose of every claim in the SAC, the Court does not reach Defendants' three alternative grounds for dismissal.

10

The statute of limitations applicable to a section 1983 cause of action is "the personal injury statute of limitations of the state in which the cause of action arose." *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011).  The statute of limitations for personal injury actions in California is two years.  Cal. Code Civ. Proc. § 335.1 (2003).  Thus, the statute of limitations for a section 1983 claim arising in California is also two years.  *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 956 (9th Cir. 2011).

Although state law sets the length of the limitations period, "federal law determines when a civil rights claim accrues." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (quoting *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153–54 (9th Cir. 2000)).  Under federal law, "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the[ir] action." *Id.* (citation omitted).  Under this standard, a plaintiff need not know or appreciate the full extent of their injury for the limitations period to accrue.  *Wallace v. Kato*, 549 U.S. 384, 391 (2007); *see Morales*, 214 F.3d at 1154.  It is enough that the plaintiff is aware of their injury and who caused it. *United States v. Kubrick*, 444 U.S. 111, 122 (1979).  Once the plaintiff is aware of that information, they are on inquiry notice to determine the readily discoverable details and critical facts of their claims.  *Ciria v. Rubino*, No. 07-cv-04770-MMC-PR, 2008 WL 4287558, at *7 (N.D. Cal. Sept. 17, 2008) (citing *Nasim v. Warden*, 64 F.3d 951, 955 (4th Cir. 1995)), *aff'd*, 394 F. App'x 400 (9th Cir. 2010).  Thus, even a plaintiff who did not know that their rights were violated will be barred from bringing their claims once the limitations period lapses if they "should have known in the exercise of due diligence." *Davis v. Davis*, 18-cv-00094-RS, 2018 WL 3069308, at *3 (N.D. Cal. Apr. 25, 2018) (quoting *Bibeau v. Pac. Nw. Rsch. Found., Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999)).

### 1.    Accrual

The core injury underlying Plaintiffs' federal civil rights claims is the same for each claim:  Cal/OSHA's imposition of citations and penalties on Basilico's on June 17, 2021.  *See* SAC at 2–3 (alleging that "Plaintiffs . . . bring this action against [Defendants] . . . for unlawfully imposing a fine against Basilico's," that "Cal-OSHA[] . . . unlawfully fin[ed] Basilico's for *Roman*'s exercise of his First Amendment rights," and that the fine was "excessive"); *id.* ¶ 132 (alleging that "Roman did not receive proper, formal notice from Cal-OSHA of the facts upon which the [penalties] assessment

11

was based, or why the amount of $185,000.00 would be due"); *see also* Motion at 15 ("[T]he citations and penalties are the bases for Plaintiffs' claims."). Plaintiffs' theories, and the sequence of events following the June 2021 imposition confirm this reading.

Plaintiffs predicate their First Amendment and unconstitutional-conditions claims on allegations that Cal/OSHA fined Basilico's to punish Roman's political speech. *See* SAC at 3; *id.* ¶¶ 94–120; Opposition at 19. They base their Fourteenth Amendment claim on the alleged lack of process Cal/OSHA afforded Basilico's in connection with the imposition and collection of the penalties. *See* SAC ¶¶ 128–37; Opposition at 15–18. And they ground their Eighth Amendment claim on the alleged disproportion between the sum of the penalties Cal/OSHA imposed and the gravity of Basilico's ETS violations. *See* SAC ¶¶ 138–46; Opposition at 20–21. All of these claims stem from Cal/OSHA's June 2021 imposition. As does every event that followed, including the DIR's state action against Basilico's in May 2023 to collect the unpaid penalties, RJN Ex. A, at 11–12, the state court's judgment against Basilico's in that action, *id.* at 11, and the DIR's post-judgment efforts to collect the unpaid penalties from Basilico's bank account, *see* SAC ¶¶ 82–83. Cal/OSHA's imposition of citations and penalties is thus the foundational injury that underpins Plaintiffs' claims. The dispositive question, then, is when Plaintiffs knew, or in the exercise of reasonable diligence should have known, of those citations and penalties. *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012).

Defendants argue that Plaintiffs were aware of the citations and penalties and their cause by July 8, 2021, or, alternatively, by no later than November 27, 2021. Motion at 15; *see id.* at 18. Plaintiffs do not meaningfully dispute either asserted date. In their Opposition, they state without development that they "disagree with th[e] contention" that Roman was aware of the citations and penalties by those dates. Opposition at 17. Yet at oral argument, Plaintiffs admitted that they were aware of the citations and penalties before 2023.[9] Generally, a party's failure to meaningfully respond to a party's arguments in opposition to a motion to dismiss constitutes a concession as to the merits of those arguments. *Malibu Behav. Health Servs., Inc. v. Magellan Healthcare, Inc.*, No. 20-

_____

[9] Plaintiffs did not specify when before 2023 they became aware of the citations and penalties. They admitted that the citations and penalties against Basilico's "took place" in 2021 and stated that they saw them published on Cal/OSHA's website at some unspecified time before 2023.

cv-01731-DWP-VCx, 2020 WL 7646974, at *4 (C.D. Cal. Dec. 23, 2020); *see also John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) (explaining that a party's failure to adequately develop an argument in their brief operates as a waiver of that argument). Paired with Plaintiffs' concession at oral argument, that ordinarily would be enough to resolve the accrual question here. But the Court need not rest exclusively on either of Plaintiffs' concessions to do so. The judicially noticed materials decisively resolve when Plaintiffs were aware of their injury and its cause. *See Robinson v. Binello*, 771 F. Supp. 3d 1114, 1124 (N.D. Cal. 2025) (courts may consider judicially noticeable materials at the pleading stage in determining whether a claim is time-barred).

Plaintiffs' undisputed public statements confirm that they were aware of Cal/OSHA's citations and penalties contemporaneously with their imposition. *See* RJN Exs. B–C; *see also DoorDash, Inc. v. City & County of San Francisco*, No. 21-cv-05502-EMC, 2022 WL 867254, at *5 (N.D. Cal. Mar. 23, 2022) ("Courts have judicially noticed documents with a party's own statements to establish awareness," particularly where, as here, there is no dispute that a party made those statements). On July 8, 2021, Plaintiffs posted a YouTube video with the following caption: "We just discovered that on June 17, 2021, [Cal/]OSHA proposed massive fines." RJN Ex. B, at 35 (emphasis omitted). In the video, Plaintiffs identify the date the citations and penalties were imposed ("June 17, 2021"), the amount of the penalties they were subject to ("$152,060.00"), the agency that imposed them ("[Cal/]OSHA"), and the contact information of the agency officials who issued them to Basilico's. *Id.* at 35–36, 39; *New Development* at 3:38–4:06. The video also broadcast Plaintiffs' considered response to the penalties: they would do "nothing." RJN Ex. B, at 39; *New Development* at 6:18–6:38. These statements establish that, by July 8, 2021, Plaintiffs had actual knowledge of the citations and penalties, who imposed them, and when they were imposed. That knowledge put Plaintiffs squarely on inquiry notice to determine the readily discoverable details and critical facts of their claims. *Ciria*, 2008 WL 4287558, at *7. Because Plaintiffs knew, or in the exercise of reasonable diligence should have known, of their injury and its cause by July 8, 2021, the statute of limitations accrued on that date.

Alternatively, the statute of limitations accrued no later than November 27, 2021. Plaintiffs' webpage, archived on that date, reflects their statements that Cal/OSHA had "fined [them]

13

$152,060.00" and "offered [them] an opportunity to defend [them]selves in hearings, to make changes to [their] operations[] in order to come into compliance with lockdown related mandates, and to negotiate away the fines."  RJN Ex. C, at 44; *see Story of Our Fight*, The Constitutional Battleground, https://web.archive.org/web/20211127141118/https://theconstitutionalbattleground.com/story-of-our-fight [https://perma.cc/2SR4-Q2D2].  Despite these opportunities to be heard and cure their ETS violations, Plaintiffs elected to "ignore[] all correspondence."  RJN Ex. C, at 44. These statements go beyond simply confirming Plaintiffs' awareness of the citations and penalties and who imposed them in November 2021.  They also establish that Plaintiffs knew the amount of the penalties they were subject to, understood why the penalties were imposed, and recognized that they had opportunities to defend themselves in hearings, abate their ETS violations, and negotiate away the penalties.  Because Plaintiffs knew, or in the exercise of reasonable diligence should have known, of their injury and its cause by November 27, 2021, the statute of limitations accrued no later than that date.

Plaintiffs resist this conclusion only obliquely.  Principally, they contend that Basilico's "did not receive formal, written notice as required under the law . . . that it would be fined, levied[,] or otherwise have its bank accounts seized, had no hearing pertaining to the purported fine, and was not provided with any opportunity prior to the imposition of the fine" to contest it.  SAC ¶ 81.  By "the law," Plaintiffs refer to state regulations governing Cal/OSHA's service of the citations and penalties.  Opposition at 17 (citing Cal. Code Regs. tit. 8, § 333(a)).  But as the Court has explained, the accrual of section 1983 cause of action "is a question of federal law that is *not* resolved by reference to state law."  Order at 15 (quoting *Wallace*, 549 U.S. at 388).  Even so, Plaintiffs' contentions concerning lack of notice and an opportunity to be heard are squarely undercut by their own public statements to the contrary—statements which Plaintiffs themselves have agreed the Court may consider.  *See* RJN Ex. C, at 44; Motion at 13 n.2; *see also Sprewell*, 266 F.3d at 988 (courts "need not . . . accept as true allegations that contradict matters properly subject to judicial notice").  To the extent Plaintiffs' contention could be construed as invoking the delayed-discovery rule, that rule does not help them in this case.  A section 1983 claim accrues when a plaintiff knows

14

or should have known of their injury and its cause. *Bonneau*, 666 F.3d at 581. And Plaintiffs' own statements establish their awareness of both by July 2021, or at the very latest by November 2021.

Whether the two-year limitations period accrued in July or November 2021 ultimately makes no material difference. If it accrued in July 2021, then any claims Plaintiffs filed after July 2023 are untimely. If it accrued in November 2021, then any claims they filed after November 2023 are untimely. In either scenario, Plaintiffs' claims are untimely because they did not file this action until September 9, 2025. *See* Complaint. Plaintiffs' federal civil rights claims are thus time-barred unless the limitations period was statutorily or equitably tolled. *See Wilson v. Hays*, 228 F. Supp. 3d 1100, 1108 (S.D. Cal. 2017).

### 2.    Tolling

Plaintiffs neither allege nor argue that statutory or equitable tolling applies. *See generally* SAC; Opposition. Even if they had invoked equitable tolling, the record forecloses its application.

Under the federal equitable-tolling doctrine, Plaintiffs must show that they pursued their rights diligently and that some extraordinary circumstance prevented their timely filing. *Smith v. Davis*, 953 F.3d 582, 588 (9th Cir. 2020) (en banc). Under California's equitable-tolling doctrine, Plaintiffs must show timely notice and lack of prejudice to Defendants, as well as reasonable and good-faith conduct on Plaintiffs' part. *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 99 (2008).

Here, equitable tolling is not warranted under either formulation. After learning that Cal/OSHA had imposed citations and penalties on Basilico's in June 2021, and despite Cal/OSHA offering them hearings, opportunities to cure their ETS violations, and a chance to negotiate away the penalties, Plaintiffs declared that they would do "nothing" and "ignored all correspondence" from Cal/OSHA. RJN Ex. B, at 35–39; *id.* Ex. C, at 44. Plaintiffs then sat on their rights for nearly four years before filing this action in 2025. *See* Complaint. Nothing in the record suggests that Plaintiffs pursued their rights diligently, much less that some extraordinary circumstance prevented them from doing so. Nor does the record credibly establish that Plaintiffs engaged in reasonable and good-faith conduct in connection with the imposition of the citations and penalties. Indeed, the

15

record suggests the opposite.  *See* RJN Ex. B, at 35–39; *id.* Ex. C, at 44.  Under these circumstances, equitable tolling is not warranted.  Plaintiffs' federal civil rights claims are thus time-barred.

### 3.    The Continuing-Violations Doctrine

Attempting to sidestep this conclusion, Plaintiffs reprise the same continuing-violations theory that the Court already considered and rejected in its Order dismissing the FAC.  *See* Order at 15–17; *compare* SAC ¶¶ 73–75, *and* Opposition at 13–15, *with* Plaintiffs' Opposition to Defendants' Motion to Dismiss FAC at 12–13 [Dkt. 24].  Plaintiffs contend that the DIR's levies on Basilico's bank account in September 2023 and October 2024 each constituted a new injury that triggered a new limitations period.  SAC ¶¶ 73–75 (citing *Thomas v. County of Humboldt*, 124 F.4th 1179, 1192 (9th Cir. 2024)).  Defendants respond that the levies were not continuing violations but rather continual ill effects resulting from Cal/OSHA's original imposition in June 2021.  Motion at 15–17.  Defendants, again, have the better argument.

The continuing-violations doctrine permits a plaintiff to seek relief for acts outside the limitations period in narrow circumstances.  *See Knox*, 260 F.3d at 1013.  It applies only to "continual unlawful acts," not to "continual ill effects from an original violation."  *Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008) (en banc) (citation omitted); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (explaining that independently wrongful, discrete acts trigger the accrual of a new limitations period).  As the Ninth Circuit has "repeatedly held," a "mere 'continuing *impact* from past violations is not actionable.'"  *Knox*, 260 F.3d at 1013 (emphasis in original).  The operative inquiry is thus whether the challenged act that occurred within the limitations period is itself an "independently wrongful, discrete act" that starts the limitations clock anew, or rather "the delayed, but inevitable, consequence of the original" wrong that does not.  *Pouncil v. Tilton*, 704 F.3d 568, 581 (9th Cir. 2012).

Two Ninth Circuit cases mark the doctrine's outer limits in this context.  In *Knox*, the Ninth Circuit held that the continuing-violations doctrine did not apply where the California Department of Corrections permanently suspended an attorney's client correspondence and visitation privileges and then repeatedly denied her subsequent correspondence and visitation requests.  *Knox*, 260 F.3d at 1011–15.  The permanent suspension, the Court reasoned, was "the symbolic punch in

the nose, triggering the statute of limitations," and the later denials were "more akin to developing problems as a natural consequence of the one and only punch, such as a bloody nose." *Id.* at 1014–15. Because each subsequent denial of the attorney's privileges relied on the original permanent suspension, the later denials were "nothing more than the delayed, but inevitable, consequence" of the original suspension decision. *Id.* at 1014. In other words, they were the "continuing impact of the permanent suspension, not new violations in and of themselves." *Id.* at 1015.

Later in *Thomas*, the Ninth Circuit addressed the continuing-violations doctrine in the excessive-fines context. *See Thomas*, 124 F.4th at 1192. Observing that "each *imposition* of a challenged fine is a new, distinct injury" that restarts the limitations clock, the Court applied the continuing-violations doctrine to the facts before it and reached opposite results for two plaintiffs. *See id.* (citing U.S. Const. amend. VIII) (emphasis added). For plaintiff Olson, the Court held that her excessive-fines claim was timely because Humboldt County "continued to impose [daily] penalties" on her during the limitations period, such that "each imposition was a new unlawful act" that restarted the limitations clock. *Id.* For plaintiff Glad, however, the Court held that his excessive-fines claim was untimely because "no daily penalties were imposed within the limitations period." *Id.* The Court explained that the mere fact that Glad "continue[d] to face the coercive effects of the heavy penalties" imposed prior to the commencement of the statute of limitations was "not enough to make his as-applied claim timely." *Id.* (citing *Garcia*, 526 F.3d at 462, for the proposition that a continuing violation is not occasioned by "continual ill effects from an original violation").

These authorities frame the inquiry that governs here: whether the levies that Plaintiffs invoke were new impositions on Basilico's that triggered the accrual of a new statute of limitations, or whether they were merely the downstream consequences of a single, pre-limitations-period imposition that did not. On this record, the Court concludes they were undoubtedly the latter.

Cal/OSHA imposed penalties on Basilico's once, on June 17, 2021, in the amount of $152,060. RJN Ex. A, at 29. Plaintiffs do not allege that Cal/OSHA revisited Basilico's compliance with the ETS, issued new citations, assessed new penalties, or imposed any daily or recurring fines within the limitations period. The penalties Cal/OSHA imposed on Basilico's were fixed in 2021

and have remained fixed since.  That single imposition, which Plaintiffs themselves have characterized as the "original sin" precipitating this litigation, Order at 12, 17, was "the symbolic punch in the nose" that "trigger[ed] the statute of limitations."  *Knox*, 260 F.3d at 1014.

The DIR's subsequent levies do not alter this analysis.  Those levies were not newly imposed "fines" but were rather the downstream, mechanical consequences of Cal/OSHA's June 2021 imposition.  The sequence of events following that imposition bears this out.

After Plaintiffs failed to timely contest the citations and penalties, they became final and unreviewable.  Cal. Labor Code § 6601 (1974); Cal. Code Regs. tit. 8, § 333(a); *see* RJN Ex. A, at 12–13.  Two years after Cal/OSHA imposed the penalties, the DIR brought a state collection action against Basilico's based exclusively on the penalties Cal/OSHA had imposed and for the sole purpose of recovering those penalties.  RJN Ex. A, at 11–12; *see also* Cal. Labor Code § 6650(a) (authorizing the DIR to bring a penalty-collection action "[a]fter the expiration of the period during which a penalty may be appealed, no appeal having been filed").  The state court then entered judgment for the DIR against Basilico's in the amount of the penalties, plus accrued statutory interest.  RJN Ex. A, at 11; *see* Cal. Labor Code § 6650(c) (requiring state court clerk to "immediately . . . enter judgment for the state against the person assessed the civil penalty in the amount of the penalty, plus interest due . . .").  Only after that judgment was entered did the DIR issue a notice of levy in August 2023 and collect portions of the penalties from Basilico's bank account in September 2023 and October 2024.  *See* SAC ¶¶ 80–83.

This sequence confirms that the levies were "simply the mechanical consequences of . . . Cal/OSHA's citations and penalties in June 2021."  Order at 17.  In the same way that the California Department of Corrections' denials of the attorney's requests in *Knox* depended on its original decision to suspend the attorney's client privileges, the DIR's state action and subsequent collection efforts were wholly dependent on Cal/OSHA's original June 2021 imposition.  Those efforts were ministerial and derivative, necessarily "rel[ying] on prior acts" rather than standing alone as independently wrongful, discrete acts.  *Pouncil*, 704 F.3d at 581 (citing *Bazemore v. Friday*, 478 U.S. 385, 396–97 n.6 (1986) (Brennan, J., concurring in part)).  In this way, the levies were more akin to the inevitable adverse effects resulting from a past violation, such as "a wage

18

misclassification that is repeatedly enforced," than representing discrete, independently wrongful acts that would restart the limitations clock. *St. Clair v. County of Okanogan*, 154 F.4th 1154, 1159 (9th Cir. 2025). Plaintiffs' theories reinforce this reading. Their challenges to the levies hinge entirely on the premise that the underlying penalties were wrongfully imposed, imposed without adequate process, or unconstitutionally excessive. *See* SAC ¶¶ 77–81. On these theories, the levies were wrongful only because Cal/OSHA's original imposition was wrongful.

Plaintiffs' claims thus fall squarely on Glad's side of the line that *Thomas* drew. Like Glad, Plaintiffs were fined once before the limitations period commenced. *Thomas*, 124 F.4th at 1192. And like Glad, their continued exposure to the coercive consequences of that isolated imposition "is not enough to make [their] as-applied claim timely." *Id.* Although the levies might have marked the point at which the consequences of Cal/OSHA's June 2021 imposition became painful for Plaintiffs, the focus for limitations purposes is on the time of the unlawful act, "not the point at which the consequences of the act become painful." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (per curiam) (emphasis in original). Consequently, the continuing-violations doctrine does not rescue Plaintiffs' stale claims.

In sum, Plaintiffs' federal civil rights claims accrued no later than November 2021, and the statute of limitations lapsed no later than November 2023. Because Plaintiffs did not file their complaint until September 2025, and because tolling is not warranted and the continuing-violations doctrine does not apply, their federal civil rights claims in Counts 1, 2, 4, and 5 are time-barred. Given that Plaintiffs' demand for declaratory relief under state law is subject to the same limitations period as their federal civil rights claims, Count 3 is likewise time-barred.[10] *See Bank of N.Y. Mellon v. Citibank, N.A.*, 8 Cal. App. 5th 935, 943 (2017) (under California law, "[a] claim for declaratory relief is subject to the same statute of limitations as the legal or equitable claim on which

---

[10] Count 3 is also subject to dismissal because "declaratory judgment is only a remedy, and therefore derivative of underlying claims." *Gilliam v. Bank of Am., N.A.*, No. 17-cv-01296-DOC-JPRx, 2018 WL 6537160, at *16 (C.D. Cal. June 22, 2018). It "cannot stand in the absence of an underlying substantive cause of action." *Valvoline Instant Oil Change Franchising, Inc. v. RFG Oil, Inc.*, No. 12-cv-02079-GPC-KSC, 2014 WL 2511448, at *3 (S.D. Cal. June 4, 2014); *see Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195 F.3d 1107, 1111 n.2 (9th Cir. 1999) (observing that a state-law cause of action for "declaratory judgment" "merely seeks relief rather than stating a claim").

it is based"); *Cammarata v. Kelly Cap., LLC*, 339 F. Supp. 3d 1033, 1048 (S.D. Cal. 2018) (dismissing state-law declaratory relief claims as time-barred because the substantive causes of action which those claims were based were time-barred), *aff'd*, 806 F. App'x 531 (9th Cir. 2020). The Court thus dismisses the SAC in its entirety.

### B.    Eleventh Amendment

Although the statute of limitations independently disposes of Plaintiffs' SAC, the Court addresses Defendants' alternative argument for dismissal under the Eleventh Amendment in the interests of completeness and judicial efficiency.

The Eleventh Amendment prohibits federal courts from extending the judicial power of the United States "to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. Although the Eleventh Amendment does not, by its terms, prohibit courts from entertaining an action against a state by its own citizens, the Supreme Court has construed its text as barring such suits. *Hans v. Louisiana*, 134 U.S. 1, 15 (1890); *see Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). The Eleventh Amendment thus prohibits a federal court from entertaining any suit brought by a private citizen against their own state. *Hans*, 134 U.S. at 15; *see Almond Hill Sch. v. U.S. Dep't of Agric.*, 768 F.2d 1030, 1033 (9th Cir. 1985). This jurisdictional bar "extends to state agencies and to state officers" acting in their official capacities, *Nat. Res. Def. Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 421 (9th Cir. 1996), and "applies regardless of the nature of the relief sought," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

There are three recognized exceptions to the Eleventh Amendment's bar. First, Congress can abrogate a state's sovereign immunity. *See Quern v. Jordan*, 440 U.S. 332, 343–44 (1979). In enacting section 1983, however, Congress "had no intention to disturb the States' Eleventh Amendment immunity." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Second, a state may waive its sovereign immunity and consent to suit in federal court. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985), *superseded by statute on other grounds as stated in Lane v. Pena*, 518 U.S. 187, 197–200 (1996). But California has neither waived its immunity nor consented to suit in federal court with respect to claims brought against it

20

under section 1983. *Dittman v. California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999). That leaves the third exception. Under *Ex parte Young*, a federal court may entertain an official-capacity suit against a state officer and grant prospective relief against that state officer when their ongoing official acts violate federal law. *See* 209 U.S. 123, 156 (1908). This exception is premised on the notion that a state officer whose official acts violate federal law cannot cloak their acts under the aegis of state sovereign immunity and is effectively "stripped" of their official or representative character. *Pennhurst*, 465 U.S. at 102 (quoting *Ex parte Young*, 209 U.S. at 160).

The scope of this exception is narrow, however. *P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 146. The *Ex parte Young* exception does not permit "judgments against state officers declaring that they violated federal law in the past," *id.*, and it is "inapplicable in a suit against state officials on the basis of state law," *Pennhurst*, 465 U.S. at 106. The exception applies only when a complaint "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation omitted). To invoke the exception, a plaintiff must also plausibly establish that the state official has a "fairly direct" connection to the enforcement of the challenged act. *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013). "[A] generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision" is not enough. *Id.*

Defendants argue that the Eleventh Amendment bars Plaintiffs' official-capacity claims against Governor Newsom and, separately, that Plaintiffs cannot maintain their official-capacity claims against former Cal/OSHA chiefs Parker and Killip because they no longer hold state office. Motion at 14–15; Reply at 4–5. Plaintiffs respond that the *Ex parte Young* exception preserves their claims, principally against Lee, and that Parker and Killip should be substituted for the incumbent officeholder at Cal/OSHA. Opposition at 6, 10–12. Neither party addresses the state sovereign immunity issues implicated by Plaintiffs' official-capacity claims against Lee. The Court considers those issues sua sponte. *Chandler v. Cal. Dep't of Corrs. & Rehab.*, No. 21-cv-01657-JLT-HBK, 2024 WL 2153890, at *9 (E.D. Cal. May 14, 2024) (collecting cases and explaining that "the Court may *sua sponte* address state sovereign immunity issues"); *see In re Jackson*, 184 F.3d 1046, 1048

21

(9th Cir. 1999) (stating that the court "must resolve" the "Eleventh Amendment sovereign immunity issue this case presents," despite the issue not being raised or discussed by the parties), *superseded by statute on other grounds as stated in In re Berkovich*, 15 F.4th 997, 998 (9th Cir. 2021).  For the reasons set out below, the Court concludes that the *Ex parte Young* exception does not apply, that state sovereign immunity and the Eleventh Amendment bar the Court from entertaining Plaintiffs' official-capacity claims against Governor Newsom and Lee, and that Plaintiffs cannot maintain their official-capacity claims against Parker and Killip.

### 1.    Governor Newsom

The Court begins where it left off in its Order dismissing the FAC.  There, the Court explained that state sovereign immunity shielded Governor Newsom from Plaintiffs' official-capacity claims because Plaintiffs neither sought prospective relief against him nor alleged sufficient facts to plausibly establish a connection between Governor Newsom and the conduct Plaintiffs challenged.  Order at 9–11.  Armed with this guidance, Plaintiffs simply reassert the same official-capacity claims against Governor Newsom as they did in the FAC, only this this time they insist that they have "adequately pled" a demand for prospective relief and facts establishing his connection to the challenged conduct.  Opposition at 10–11.  The SAC does neither.

Plaintiffs still do not seek any prospective relief against Governor Newsom.  The only demand for "prospective injunctive relief" in the SAC is directed against "Debra Lee."  SAC at Prayer for Relief ¶¶ B–C.  Because the SAC is devoid of any similar demand for prospective relief against Governor Newsom, and because the demand against Lee is by itself inadequate to invoke the *Ex parte Young* exception with respect to Governor Newsom, the exception does not apply.  *See* Order at 9–10 (finding that the *Ex parte Young* exception did not apply to Governor Newsom where the only prospective relief Plaintiffs sought was an order "prohibiting *Cal/OSHA*" from engaging in certain conduct); *see also Hettinga v. Newsom*, No. 20-cv-06092-PA-DFMx, 2021 WL 3024310, at *3 (C.D. Cal. Jan. 25, 2021) (holding that *Ex parte Young* did not apply to claims against Governor Newsom where plaintiff demanded prospective relief against a different state official), *report & recommendation adopted*, 2021 WL 10425389 (C.D. Cal. Mar. 1, 2021).

Plaintiffs nevertheless assert that they seek prospective relief against Governor Newsom because they request a declaration that his past actions "were *ultra vires* under the 'major questions doctrine.'"[11]  Opposition at 10–11 (citing SAC at Prayer for Relief ¶ A); *see* SAC ¶¶ 22 (alleging that California Executive Order No. N-33-20 "was *ultra vires* as it involved 'major questions'"), 126 (demanding a declaration that "[Governor] Newsom's ETS was promulgated in violation of the [Administrative Procedure Act]" and was "*ultra vires* under the 'major questions' doctrine").  That argument, however, rests on a misunderstanding of the distinction between prospective and retrospective declaratory relief.

While prospective declaratory relief is permissible under *Ex parte Young* because it can "serve[] directly to bring an end to a present violation of federal law," retrospective declaratory relief is nonetheless barred by the Eleventh Amendment because it serves only to declare that a state official violated federal law in the past and would "in essence serve[] to compensate a party injured in the past."  *Lund v. Cowan*, 5 F.4th 964, 969–70 (9th Cir. 2021) (quoting *Papasan v. Allain*, 478 U.S. 265, 278 (1986)); *see Nat'l Audobon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847–48 & n.5 (9th Cir. 2002) (addressing this distinction); *see also Green v. Mansour*, 474 U.S. 64, 71–73 (1985) (holding that the Eleventh Amendment barred retrospective declaratory relief against state officials).

The relief that Plaintiffs seek falls squarely on the retrospective side of this divide.  The declarations they demand concern only past completed conduct, including pronouncements that

_____

[11] Plaintiffs misplace their reliance on the major-questions doctrine as a vehicle to retroactively invalidate Governor Newsom's past actions.  *See* SAC ¶ 126; Opposition at 11.  The doctrine has been described as a federal nondelegation canon that limits federal executive authority, *see Nat'l Fed. of Indep. Bus. v. Dep't of Labor* (*NFIB*), 595 U.S. 109, 124 (2022) (Gorsuch, J., concurring), or as "an interpretive tool reflecting 'common sense as to the manner in which Congress is likely to delegate a policy decision of such economic and political magnitude to an administrative agency,'" *Biden v. Nebraska*, 600 U.S. 477, 511 (Barrett, J., concurring).  The source and status of the doctrine aside, its reach has only been extended to "extraordinary cases" involving a federal agency's "transformative expansion in [its] regulatory authority."  *West Virginia v. E.P.A.*, 597 U.S. 697, 721–24 (2022).  Plaintiffs identify no authority suggesting the doctrine limits the power of state executives, state agencies, or state administrative processes.  Nor do they point to any California decision adopting the doctrine as a matter of state law or recognizing a state-law analogue that might govern here.  *Cf.* Michael Asimow et al., *California Practice Guide: Administrative Law* ¶ 1:12 (The Rutter Group 2025) ("California has no equivalent of the 'major questions doctrine.'").  The major-questions doctrine thus provides no basis for evaluating the actions taken by Governor Newsom that Plaintiffs purport to challenge here.

Governor Newsom's issuance of the stay-at-home order and his alleged role in the promulgation and adoption of the ETS were unlawful. *See* SAC ¶¶ 22–23, 126; *id.* at Prayer for Relief ¶ A. Beyond the fact that the stay-at-home order was rescinded years before Plaintiffs initiated this lawsuit, and the ETS expired months before they filed suit, Cal. Exec. Order N-07-21; Cal. Code Regs. tit. 8, § 3205(a)(1); SAC ¶ 54 (acknowledging that the ETS expired), the declarations Plaintiffs seek would operate solely as backward-looking determinations of liability. But the *Ex parte Young* exception "does not permit judgments against state officers declaring that they violated federal law in the past," and the Eleventh Amendment prohibits the Court from awarding Plaintiffs any such retrospective relief. *P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 146; *see Lund*, 5 F.4th at 970 (holding that claim involving "past conduct and past harm" sought "purely retrospective relief and thus cannot survive sovereign immunity").[12]

Even if the Court could award Plaintiffs the relief they demand, the *Ex parte Young* exception still would not apply because Plaintiffs fail to plausibly establish the requisite "fairly direct" connection between Governor Newsom and the conduct they challenge. Despite the Court's guidance, Plaintiffs base their claims on unenhanced information-and-belief allegations, including allegations that Governor Newsom "directed the unlawful actions taken by various government agencies" and "conspired" with the chief of Cal/OSHA "to retaliate against and financially punish Roman and Basilico's." SAC ¶¶ 11, 92. These factually unadorned allegations are conclusory, and the Court need not accept them as true. *Iqbal*, 556 U.S. at 678.

---

[12] Plaintiffs also repeatedly invoke *NFIB*, 595 U.S. 109 (2022), to argue that Cal/OSHA and Defendants lacked authority to enforce any COVID-19-related requirements against Basilico's. *See, e.g.*, SAC ¶ 36. Their reliance on *NFIB* is misplaced. That decision addressed the scope of the federal Occupational Safety and Health Administration's ("OSHA") statutory authority and concluded only that OSHA's nationwide vaccine-or-test mandate likely exceeded that authority because it regulated a "universal risk" untethered to the particular features of the workplace. *NFIB*, 595 U.S. at 118–19. The Court did not hold that OSHA categorically lacked authority to regulate occupation-specific COVID-19 risks. To the contrary, it expressly reaffirmed that "targeted regulations are plainly permissible" where "the virus poses a special danger because of the particular features of an employee's job or workplace," including "crowded or cramped environments" such as restaurants. *Id.* at 119. Moreover, *NFIB* did not interpret state law, address state occupational-safety regimes, or limit the states' authority to respond to the COVID-19 pandemic. *Cf. id.* at 126 (Gorsuch, J., concurring) (stating that "the power" to respond to the pandemic "rests with the States and Congress"). *NFIB* thus provides no support for Plaintiffs' theory.

But even if the Court considered Plaintiffs' conclusions, the relevant authorities and record in this case foreclose the inference that Governor Newsom had the requisite "fairly direct" connection to either the promulgation of the ETS or their enforcement against Basilico's. Governor Newsom did not promulgate the ETS; the Occupational Safety and Health Standards Board did. *See* Notice of Proposed Emergency Action. In fact, the standards board is "the only agency in the state authorized to adopt occupational safety and health standards." Cal. Labor Code § 142.3(a)(1) (2002). That Governor Newsom previously directed Californians to shelter in place and heed state public-health directives during the COVID-19 pandemic does not necessarily or plausibly establish that he had any meaningfully direct connection to the standards board's promulgation or adoption of the ETS. Plaintiffs offer no non-conclusory factual allegations that would permit the Court to reasonably draw that inference. Nor did Governor Newsom issue or impose the citations and penalties on Basilico's; Cal/OSHA did. *See* RJN Ex. A, at 13–29; *see also* SAC at 3 (alleging that "Cal-OSHA . . . unlawfully fin[ed] Basilico's"). After all, the California Labor Code tasked Cal/OSHA, not Governor Newsom, with "enforc[ing] all occupational safety and health standards" adopted by the standards board. Cal. Labor Code § 142 (2002); *see id.* §§ 6307, 6308 (1984). Plaintiffs do not offer any non-speculative factual basis permitting the Court to reasonably infer that Governor Newsom directed or otherwise injected himself into any aspect of Cal/OSHA's enforcement of the ETS in Basilico's case. Finally, Governor Newsom did not participate in the state collection action or levy Basilico's bank account to collect the unpaid penalties; the DIR led both charges, securing a state-court judgment against Basilico's and collecting from Basilico's bank account the penalties that Cal/OSHA imposed earlier in June 2021. *See* RJN Ex. A, at 11–12; SAC ¶¶ 80, 82–83 (acknowledging that "the Department of Industrial Relations . . . collects funds on behalf of Cal-OSHA" and levied Basilico's bank account); *see also* Cal. Labor Code § 6650(a) (authorizing the DIR to bring a state action to collect unpaid civil penalties). Plaintiffs again fail to offer any non-conclusory factual basis that plausibly alleges Governor Newsom had any fairly direct connection to the DIR's ministerial collection efforts.

On this record, Governor Newsom's only apparent connection to these events was his "generalized duty to enforce state law or general supervisory power over the persons responsible for

25

enforcing" the ETS. *Harris*, 729 F.3d at 943. Such an attenuated link is not enough to subject him to Plaintiffs' suit. *See id.* at 943–44 (affirming dismissal of Governor Brown on state sovereign immunity grounds because "his only connection" to the challenged provision was "his general duty to enforce California law"); *see also Harris v. Newsom*, No. 20-cv-10310-DMC-P, 2021 WL 3032749, at *3 (E.D. Cal. July 19, 2021) (finding that Governor Newsom was immune from suit where "[p]laintiff has not identified specific conduct by [Governor] Newsom that is causally related to the deprivation of his rights"). Plaintiffs once again "fail[] utterly to plead a plausible connection between Governor Newsom and the challenged citations of Basilico's." Order at 10.

### 2. Parker and Killip

The official-capacity claims against Parker and Killip fail for a different reason: neither individual holds state office. *See supra* n.5. Plaintiffs concede the point in their Opposition. *See* Opposition at 11. Because Plaintiffs "may not bring claims against former state officials in their official capacity," those claims must be dismissed. *Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 n.2 (9th Cir. 1999); *accord Lopez v. Cate*, No. 10-cv-01773-AWI, 2013 WL 1151980, at *2 (E.D. Cal. Mar. 19, 2013) ("Official capacity claims against former state officials are not permissible.").

Plaintiffs resist this conclusion by invoking Federal Rule of Civil Procedure 25(d) and contending that Parker and Killip should not be dismissed outright but rather substituted for the incumbent officeholder at Cal/OSHA. *See* Opposition at 11–12. That argument collapses on itself. Rule 25(d) provides that when a public officer sued in an official capacity leaves office, the officer's successor "is automatically substituted as a party." The successor to Parker and Killip is Debra Lee. *See* Lee Press Release. Lee is already named in the SAC as a defendant in her official capacity. SAC ¶ 15. Substituting Parker and Killip for Lee would thus accomplish nothing. It would merely fold Plaintiffs' official-capacity claims against Parker and Killip into the existing, identical claims that Plaintiffs already assert against Lee. Plaintiffs offer no coherent reason to retain Parker and Killip as official-capacity defendants under these circumstances. *See Robinson v. Delgado*, No. 02-cv-01538-CW, 2008 WL 3286985, at *7 (N.D. Cal. Aug. 6, 2008) ("The Court need not substitute Lamarque's successor [under Rule 25(d)] . . . because he is already named as a defendant.").

26

### 3.   Lee

Plaintiffs ask the Court to enjoin Lee from "further levying Basilico's bank accounts" and from "conducting any future investigations into [Roman's] protected First Amendment [s]peech." SAC at Prayer for Relief ¶¶ B–C.  Neither demand qualifies under *Ex parte Young*.

As discussed above, the levies stem entirely from the same core injury that underpins all of Plaintiffs' federal civil rights claims: Cal/OSHA's imposition of citations and penalties on Basilico's.  As of June 2021, that alleged violation of federal law is complete.  *See* RJN Ex. A, at 13–30.  Plaintiffs suggest, however, that the later levies conducted by the DIR constitute ongoing violations of federal law that can be enjoined under *Ex parte Young*.  *See* SAC at Prayer for Relief ¶ C.  Not so.  The Court has already explained, repeatedly and at length, that the levies were not discrete, independently wrongful acts.  They were ministerial collection efforts undertaken by the DIR, not Cal/OSHA, after a state court reduced Cal/OSHA's final penalties to a judgment.  *See* RJN Ex. A, at 11–12; *see also* Order at 16–17.  Those collection efforts reflect the continuing consequences of Cal/OSHA's original imposition, not fresh or ongoing violations in their own right.  Plaintiffs' attempt to recharacterize them as anything different is simply a repackaging and repurposing of their continuing-violations theory for the Eleventh Amendment context.  But just as a "mere continuing impact from past violations is not actionable" under the continuing-violations doctrine, *Knox*, 260 F.3d at 1013 (cleaned up), the downstream effects of a completed alleged violation are not actionable under *Ex parte Young*, *see Davis v. Fraser*, 17-cv-00708-CAB-NLS, 2017 WL 3605444, at *4 (S.D. Cal. Aug. 22, 2017) ("[T]he *Ex parte Young* exception . . . does not apply to claims premised on past conduct."), *aff'd*, No. 17-56310, 2017 WL 5899835 (9th Cir. Nov. 15, 2017).  The exception does not authorize courts to adjudicate the legality of past actions or to remedy the consequences of a completed violation; it authorizes only prospective relief, and it applies only to "ongoing and continuous" violations of federal law.  *Horn v. Hornbeak*, No. 08-cv-016220-LJO-DLB, 2010 WL 1267363, at *23 (E.D. Cal. Mar. 31, 2010) (quoting *Papasan*, 478 U.S. at 277–78).

Even charitably construing Plaintiffs' demand as one to enjoin ongoing violations of federal law, it still fails to pass *Ex parte Young* muster.  Plaintiffs allege that Lee "attempt[ed] to continue

the enforcement actions by continuing to levy" Basilico's bank account and that she has "continued to act under color of . . . unconstitutional edicts to directly harm and punish Roman and Basilico's." SAC ¶ 35.  But Plaintiffs fail to establish that Lee has or had any fairly direct connection to the conduct they seek to enjoin.  *Forward, Inc. v. Macomber*, ___F.4th___, 2025 WL 4785110, at *2 (9th Cir. Apr. 27, 2026) (stating that the "'fairly direct' requirement . . . applies where a plaintiff seeks to enjoin an ongoing violation of federal law"), *as amended* (June 9, 2026).

Principally, Plaintiffs' allegations are conclusory and thus insufficient to establish the fairly direct connection required by *Ex parte Young*.  *See Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions . . . will not do."  (cleaned up)).  Moreover, nothing in the SAC plausibly identifies any direct action by Lee that resulted in the alleged violations of federal law.  *See Forward*, 2025 WL 4785110, at *3 (affirming dismissal of official-capacity claims where the complaint "fail[ed] to identify any direct actions by the [d]efendants that resulted in the alleged federal law violations").  Lee became chief of Cal/OSHA in 2024, years after Cal/OSHA imposed the penalties and months after the DIR allegedly began its collection efforts.  *See* Lee Press Release; RJN Ex. A, at 13, 29; SAC ¶ 81.  Plaintiffs offer nothing that plausibly connects Lee either to the original penalties imposition in June 2021 or to the DIR's subsequent collection efforts in September 2023 and October 2024.  Although Cal/OSHA operates as a subdivision of the DIR, Plaintiffs allege no facts plausibly establishing that any Cal/OSHA chief, current or former, had any fairly direct connection to the DIR's past collection efforts, or that Lee has or will have any connection to the DIR's future collection efforts.  While Plaintiffs' allegations may be consistent with the notion that Lee had some connection to the levies, pleading conclusory "facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Because Plaintiffs plead no plausible factual basis that permits the Court to reasonably infer that Lee had or has any fairly direct connection to the levies beyond her general supervisory role as chief of Cal/OSHA, the *Ex parte Young* exception does not apply.  *See Forward*, 2025 WL 4785110, at *3.

Plaintiffs' demand to enjoin Lee from "conducting any future investigations into [Roman's] protected First Amendment [s]peech" is similarly inadequate.  SAC at Prayer for Relief ¶ B.

Plaintiffs identify no ongoing investigation, allege no non-speculative threat of future investigation, and plead no facts suggesting that an investigation is imminent.  The prospect of any such investigation is even more remote given that the ETS expired in February 2025—months before Plaintiffs filed this suit—and nothing in the SAC indicates that there is any apparent or overt threat of future revival or reimposition.  Cal. Code Regs. tit. 8, § 3205(a)(1); *see* SAC ¶ 54 (conceding that the ETS "expired on February 3, 2025); *see also Brach v. Newsom*, 38 F.4th 6, 9 (9th Cir. 2022) (en banc) (dismissing as moot appeals challenging rescinded COVID-19 directives because "the mere *possibility*" of reimposition was "too remote" to present a live controversy, and stating that "speculative contingencies" provide no basis for jurisdiction); *Altman v. County of Santa Clara*, No. 21-15602, 2023 WL 33345, at *1 (9th Cir. Jan. 4, 2023) (holding that demands to enjoin enforcement of COVID-19 restrictions on businesses were moot because the restrictions expired and there was no non-speculative likelihood of reimposition).  Because Plaintiffs fail to allege any "ongoing violation of federal law for which [they] seek[] prospective injunctive relief," the *Ex parte Young* exception does not apply.[13]  *R.W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1221 (9th Cir. 2023).

### 4.    State-Law Claim for Declaratory Relief

That leaves Plaintiffs' claim for declaratory relief.  Plaintiffs seek a declaration under California Code of Civil Procedure section 1060 and California Government Code section 11350(a) against all Defendants in their official capacities that Defendants' promulgation, adoption, and enforcement of the ETS were unlawful.  *See* SAC ¶¶ 121–27; *id.* at Prayer for Relief ¶ A.  This claim fails for three independent reasons.

---

[13] Plaintiffs' demand to enjoin hypothetical future investigations also raises critical Article III standing concerns.  Among other issues, their allegations do not plausibly establish the existence of a "certainly pending" threatened injury, which is required to seek the pre-enforcement injunctive relief they demand.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) ("[A]llegations of possible future injury are not sufficient [to grant standing].")  (quoting *Clapper*, 568 U.S. at 409)).

First, the *Ex parte Young* exception is inapplicable in an action seeking declaratory relief on the basis of state law.[14] *Pennhurst*, 465 U.S. at 106; *accord Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018). Second, as discussed above, the relief Plaintiffs demand is retrospective in nature and thus barred by the Eleventh Amendment. *See P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 145–46; *Lund*, 5 F.4th at 969–70. And third, Plaintiffs' demand is time-barred because their underlying substantive causes of action are time-barred. *See Bank of N.Y. Mellon*, 8 Cal. App. 5th at 943; *Cammarata*, 339 F. Supp. 3d at 1048.

In sum, state sovereign immunity shields Governor Newsom and Lee from Plaintiffs' official-capacity claims, the Eleventh Amendment bars the Court from entertaining those claims, and Plaintiffs may not maintain their official-capacity claims against former Cal/OSHA chiefs Parker and Killip. The Court thus dismisses Plaintiffs' official-capacity claims.

### C.      Leave to Amend

Ordinarily, leave to amend should be freely granted unless it is clear that the complaint could not be saved by amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Futility of amendment, or a plaintiff's apparent inability to allege "other facts consistent with the challenged pleading" that could rectify its deficiencies, is thus an adequate reason to deny leave to amend. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Leave to amend may also be denied when a plaintiff

---

[14] Plaintiffs refer to the Declaratory Judgment Act once in passing. *See* SAC ¶ 18. They do not mention it again or seek relief under it for their third cause of action. *See generally id.*; Opposition. Even if they had, the Declaratory Judgment Act would not salvage their claim in Count 3 because "[t]he Declaratory Judgment Act provides litigants with an additional remedy; it does not create an independent claim for relief." *Cammarata*, 339 F. Supp. 3d at 1048. Plaintiffs' declaratory-relief claim has "no separate viability" where, as here, all of their underlying causes of action are barred. *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1111 (E.D. Cal. 2014).

Moreover, as "numerous federal district courts have found," the Declaratory Judgment Act "operates prospectively, not to redress past wrongs." *Judan v. Wells Fargo Bank*, No. 15-cv-05029-HSG, 2017 WL 3115172, at *11 (N.D. Cal. July 21, 2017) (collecting cases). Because Plaintiffs seek only retrospective declaratory relief, the Declaratory Judgment Act provides no basis for relief. *See Cruz v. Select Portfolio Servicing, Inc.*, No. 19-cv-00283-LHK, 2019 WL 2299857, at *8 (N.D. Cal. May 30, 2019) (dismissing declaratory-relief claim with prejudice "because the issues on which Plaintiffs sought declaratory relief do not concern prospective relief").

repeatedly fails to cure deficiencies by amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009) (finding that plaintiff's repeated failure to present new facts to state a viable claim suggested that offering them another opportunity to amend would be futile).  Where a plaintiff has previously amended their complaint, a district court's discretion to deny leave to amend is "particularly broad."  *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996) (citation omitted).

The Court concludes that offering Plaintiffs another opportunity to amend would be futile.  Plaintiffs' federal civil rights claims are time-barred and cannot be cured by further amendment.  *See Calhoun v. Dep't of Corrs.*, 402 F. App'x 196, 197 (9th Cir. 2010) (concluding that time-barred section 1983 claims "cannot be cured by amendment"); *Holmes v. Forman*, 22-cv-01102-DOC-DFMx, 2023 WL 319918, at *3 (C.D. Cal. Jan. 19, 2023) (finding that time-barred claims were "not capable of being cured by amendment").  And courts in this circuit routinely deny leave to amend where, as here, the Eleventh Amendment bars a plaintiff's official-capacity claims.  *See Thomas v. Hill*, No. 24-cv-01528-AGS-MSB, 2025 WL 319243, at *2 (S.D. Cal. Jan. 27, 2025); *Kamath v. Barmann*, No. 23-cv-00461-JLT-CDB, 2024 WL 2132607, at *2–3 (E.D. Cal. May 13, 2024); *Robinson v. Gen. Manager of Calpia*, No. 20-cv-11591-CAS-ADSx, 2022 WL 5052680, at *9, *11–12 (C.D. Cal. Aug. 22, 2022).

Plaintiffs' repeated failure to cure the deficiencies in their pleading also warrants dismissal without leave to amend.  In its Order dismissing the FAC, the Court carefully delineated the legal and jurisdictional defects that plagued Plaintiffs' claims.  *See* Order at 7–18.  Despite that guidance, Plaintiffs filed a SAC that "essentially re-pled the same facts and legal theories," without meaningfully addressing any of the structural shortcomings the Court identified in their FAC.  *Loos v. Immersion Corp.*, 762 F.3d 880, 890–91 (9th Cir. 2014) (citation omitted).  Plaintiffs acknowledged as much at oral argument, confirming that they did not enhance their factual allegations but merely cited different legal authorities.  After three iterations of their complaint, Plaintiffs' demonstrated inability to plead facts sufficient to state a viable claim is "a strong indication that [they] have no additional facts to plead."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (citation omitted), *as amended* (Feb. 10, 2009); *see also*

31

*Benavidez v. County of San Diego*, 993 F.3d 1134, 1155 (9th Cir. 2021) (holding that the district court "clearly acted within its discretion in dismissing" amended pleading with prejudice where "[p]laintiffs apparently did not attempt to remedy [their pleading's] deficiency after the district court first identified it").

Plaintiffs' Opposition reinforces these conclusions. Their principal argument is that "justice so requires" that their claims be heard on the merits. Opposition at 25. Only as an afterthought do they request leave to amend "in the event that [the Court] grants Defendants' Motion to Dismiss." *Id.* Yet Plaintiffs do not identify "any specific allegations that might rectify" the defects in their pleadings. *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). They propose no new facts or theories that could overcome the limitations period hurdle or clear the Eleventh Amendment's bar. In place of any concrete proposal, Plaintiffs effectively ask the Court to have faith that they could plead a viable claim on their fourth attempt. But "[a] plaintiff may not in substance say 'trust me,' and thereby gain a license for further amendment when [a] prior opportunity to amend ha[s] been given." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). The Court takes Plaintiffs' silence as "a demonstration of [their] inability (or, perhaps, unwillingness) to make the necessary amendment." *Carrico*, 656 F.3d at 1008.

In short, amendment would be futile, and Plaintiffs' repeated failure to cure the deficiencies in their pleadings by amendment demonstrates that they have nothing left to plead. The Court thus exercises its "particularly broad" discretion and denies Plaintiffs leave to amend. *Sisseton-Wahpeton Sioux Tribe*, 90 F.3d at 355.

## V.  CONCLUSION

For these reasons, the Court grants Defendants' Motion and dismisses Plaintiffs' SAC with prejudice. This Order constitutes the final judgment in this action. The Clerk is respectfully directed to close the case.

Dated: July 1, 2026

_____
Hernán D. Vera
United States District Judge

32